1  DAVID T. BIDERMAN (SBN 101577)
2  FARSCHAD FARZAN (SBN 215194)
   **PERKINS COIE LLP**
3  Four Embarcadero Center, Suite 2400
   San Francisco, California  94111
4  Telephone:  (415) 344-7000
   Facsimile:  (415) 344-7050
5  Email: DBiderman@perkinscoie.com
   Email: FFarzan@perkinscoie.com
6
7  Floyd Abrams (admitted *pro hac vice*)
   Adam Zurofsky (*pro hac* application to be submitted)
8  Brian T. Markley (admitted *pro hac vice*)
   Julie Allsman (admitted *pro hac vice*)
9  **CAHILL GORDON & REINDEL LLP**
   80 Pine Street
10 New York, NY 10005
   Telephone:  (212) 701-3000
11 Facsimile:  (212) 269-5420
12
13 Attorneys for Defendant The McGraw-Hill Companies, Inc.

14

15                    UNITED STATES DISTRICT COURT

16                    EASTERN DISTRICT OF CALIFORNIA

17

18 RONALD M. GRASSI and SALLY GRASSI,        CASE NO.: 2:09-CV-00543-JAM-DAD

19              Plaintiffs,                   **THE MCGRAW-HILL**
                                             **COMPANIES, INC.'S**
20       v.                                  **MEMORANDUM OF POINTS AND**
                                             **AUTHORITIES IN SUPPORT OF**
21 MOODY'S INVESTOR'S SERVICES,              **ITS MOTION TO DISMISS THE**
   STANDARD AND POOR'S, FITCH                **CLAIMS ASSERTED AGAINST IT**
22 RATINGS,                                  **BY RONALD M. GRASSI AND**
                                             **SALLY GRASSI**
23              Defendants.

24                                           Date:   July 31, 2009
                                             Time:   10:00 a.m.
25                                           Place:  Courtroom 27
26                                           Judge:  Hon. Dale A. Drozd

27

28

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

STANDARD OF REVIEW ............................................................................................... 2

I.   PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM MUST BE
     DISMISSED BECAUSE S&P DID NOT, AS A MATTER OF LAW, OWE
     EITHER OF THEM A DUTY OF CARE .......................................................... 3

     A.   Plaintiffs Fail To State A Claim Because They Have Not Alleged That
          They Were In Privity Or Its Functional Equivalent With S&P ................... 4

     B.   Plaintiffs Fail To Plead A Duty Of Care Under California Law ................. 8

II.  PLAINTIFFS HAVE FAILED TO PLEAD ADDITIONAL ELEMENTS
     NECESSARY TO STATE A CLAIM FOR NEGLIGENT
     MISREPRESENTATION .................................................................................. 10

III. PLAINTIFFS HAVE FAILED TO ALLEGE THE ELEMENTS
     NECESSARY TO STATE A CLAIM FOR FRAUD ...................................... 12

IV.  PLAINTIFFS' CLAIMS ARE BARRED BY THE FIRST AMENDMENT ................... 14

     A.   Credit Ratings Are Opinions That Cannot Be Found False ....................... 15

     B.   Plaintiffs Have Not Alleged Actual Malice ............................................... 16

CONCLUSION ................................................................................................................ 19

i

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                     **Page**

3
*In re Actimmune Marketing Litigation*, No. C 08-02376-MHP, 2009 WL
4
1139585 (N.D. Cal. Apr. 28, 2007) .......................................................   14

*Aetna Caualty and Surety* v. *Aniero Concrete Co.*, 404 F.3d 566 (2d Cir.
5
2005) ...................................................................................................   10

6
*Ashcroft* v. *Iqbal*, 129 S. Ct. 1937 (2009) ............................................   2-3, 12n,
                                                                               14
7
*Barger* v. *Playboy Enterprises, Inc.*, 564 F. Supp. 1151 (N.D. Cal. 1983) ..........   18
8
*Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007) ...........................   3, 12n, 14
9
*Bily* v. *Arthur Young & Co.*, 3 Cal. 4th 370 (Cal. 1992)........................   2n, 8-9,
10                                                                             10n, 11

11
*B.L.M.* v. *Sabo & Deitsch*, 55 Cal.App.4th 823 (Ct. App. 1997) .........................   9

12
*Bose Corp.* v. *Consumer Union of the United States, Inc.*, 466 U.S. 485
13
(1984) ..................................................................................................   17

*Branch* v. *Tunnell*, 14 F.3d 449 (9th Cir. 1994), <u>overruled on other grounds</u>
14
<u>by</u> *Gailbraith* v. *County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)..............   4n

15
*Bruns II* v. *Ledbetter*, 583 F. Supp. 1050 (S.D. Cal. 1984) ...................   13

16
*Chapman* v. *Chronicle*, No. C 07-4775 SBA, 2009 WL 102821 (N.D. Cal.
17
Jan. 14, 2009).....................................................................................   3n

18
*Church of Scientology International* v. *Behar*, 238 F.3d 168 (2d Cir. 2001) ........   17

19
*Compuware Corp.* v. *Moody's Investors Services, Inc.*, 222 F.R.D. 124
(E.D. Mich. 2004) ...............................................................................   4n

20
*Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520 (6th
21
Cir. 2007) ...........................................................................................   15, 18

22
*Cooper* v. *Pickett*, 137 F.3d 616 (9th Cir. 1997)....................................   14

*County of Orange* v. *McGraw Hill Cos.*, 245 B.R. 151 (C.D. Cal. 1999) ............   17-18
23
*Credit Alliance Corp.* v. *Arthur Andersen & Co.*, 483 N.E.2d 110 (N.Y.
24
1985) ...................................................................................................   5-6, 11

25
*Daniel* v. *Dow Jones & Co.*, 520 N.Y.S.2d 334 (N.Y.C. Cir. Ct. 1987) ..............   4n, 6

26
*DiVittorio* v. *Equidyne Extractive Industries, Inc.*, 822 F.2d 1242 (2d Cir.
1987) ...................................................................................................   13
27
*Edwards* v. *Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004) ................   3n
28

ii

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 511 F. Supp. 2d 742 (S.D. Tex. 2005) .......................................................... 7-9, 18

*Erikson* v. *Pardus*, 551 U.S. 89 (2007) ................................................. 3n

*First Equity Corp.* v. *Standard & Poor's Corp.*, 670 F. Supp. 115 (S.D.N.Y. 1987), aff'd, 869 F.2d 175 (2d Cir. 1989) ............................ 4n

*First Equity Corp.* v. *Standard & Poor's Corp.*, 690 F. Supp. 256 (S.D.N.Y. 1988), aff'd on other grounds, 869 F.2d 175 (2d Cir. 1989) ............... 18

*Friedman* v. *Merck & Co.*, 107 Cal. App. 4th 454 (Ct. App. 2003) ..................... 2n

*FSR Brokerage, Inc.* v. *Superior Court*, 35 Cal. App. 4th 69 (Ct. App. 1995) ............................................................................... 9

*Garcia* v. *Superior Court*, 50 Cal.3d 728 (1990).................................... 12

*Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323 (1974) ................................. 16

*Ginsburg* v. *Agora Inc.*, 915 F. Supp. 733 (D. Md. 1995) .................................... 9

*In re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541 (9th Cir. 1994)................. 3, 10

*Gutierrez* v. *Wells Fargo & Co.*, No. C 07-05923, 2009 WL 1246689 (N.D. Cal. May 5, 2009) .......................................................... 11

*Gutter* v. *Dow Jones, Inc.*, 490 N.E.2d 898 (Ohio 1986) ..................................... 9

*Harte-Hanks Communications, Inc.* v. *Connaughton*, 491 U.S. 657 (1989) ......... 18

*Hustler Magazine* v. *Falwell*, 485 U.S. 46 (1988).................................. 17

*Hydro Investors, Inc.* v. *Trafalgar Power Inc.*, 227 F.3d 8 (2d Cir. 2000) .......... 10

*IT Corp.* v. *Ecology and Environmental Engineering, P.C.*, 713 N.Y.S.2d 633 (4th Dep't 2000)........................................................... 6

*Jaillet* v. *Cashman*, 189 N.Y.S. 743 (Sup. Ct. N.Y. Co. 1921), aff'd, 139 N.E. 714 (N.Y. 1923).......................................................... 4n, 6

*Jefferson County School District* v. *Moody's Investor's Services, Inc.*, 175 F.3d 848 (10th Cir. 1999)........................................................ 15

*Kearney* v. *Salomon Smith Barney, Inc.*, 39 Cal.4th 95 (Cal. 2006).................... 4n

*King* v. *Crossland Savings Bank*, 111 F.3d 251 (2d Cir. 1997)............................ 10-11

*Laub* v. *Faessel*, 745 N.Y.S.2d 534 (1st Dep't 2002)............................... 12

*Long* v. *Arcell*, 618 F.2d 1145 (5th Cir. 1980)...................................... 17

*Lovell* v. *Griffin*, 303 U.S. 444 (1938) ................................................. 15n

*Lowe* v. *SEC*, 472 U.S. 181 (1985) .......................................................................... 15n

*Lubin* v. *Sybedon Corp.*, 688 F. Supp. 1425 (S.D. Cal. 1988) ................................ 13

*Melnick* v. *Parlato*, 745 N.Y.S.2d 68 (2d Dep't 2002) .......................................... 6

*Meridian Project Systems, Inc.* v. *Hardin Construction Co.*, 404 F. Supp. 2d 1214 (E.D. Cal. 2005) ............................................................................................ 3, 10-11

*Milkovich* v. *Lorain Journal Co.*, 497 U.S. 1 (1990) ............................................. 16

*Mirkin* v. *Wasserman*, 5 Cal.4th 1082 (1993) ....................................................... 12

*MS Partnership* v. *Wal-Mart Stores, Inc.*, 741 N.Y.S.2d 793 (4th Dep't 2002) ........................................................................................................................... 6

*New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964) .......................................... 16

*Ossining Union Free School Disrict* v. *Anderson La Rocca Anderson*, 539 N.E.2d 91 (N.Y. 1989) ............................................................................................. 5

*In re Pan Am Corp.*, 161 B.R. 577 (S.D.N.Y. 1993) .............................................. 16n

*In re Petroleum Products Antitrust Litigation*, 680 F.2d 5 (2d Cir.), cert. denied, 459 U.S. 909 (1982) .................................................................................... 15n

*Quinn* v. *McGraw-Hill Cos.*, 168 F.3d 331 (7th Cir. 1999) .................................. 12

*Rick-Mik Enterprises, Inc.* v. *Equilon Enterprises, LLC*, 532 F.3d 963 (9th Cir. 2008) ............................................................................................................. 3

*Robinson Helicopter Co.* v. *Dana Corp.*, 34 Cal.4th 979 (2004) .......................... 13-14

*R&W Technical Services Ltd.* v. *CFTC*, 205 F.3d 165 (5th Cir.), cert. denied, 531 U.S. 817 (2000) .................................................................................... 15n

*Security Pacific Business Credit, Inc.* v. *Peat Marwick, Main & Co.*, 597 N.E.2d 1080 (N.Y. 1992) ......................................................................................... 6

*In re Scott Paper Co. Securities Litigation*, 145 F.R.D. 366 (E.D. Pa. 1992) ....... 16n

*Shamley v. ITT Corp.*, 869 F.2d 167 (2d Cir. 1989) .............................................. 19

*St. Amant* v. *Thompson*, 390 U.S. 727 (1968) ....................................................... 17-18

*Stancik* v. *CNBC*, 420 F. Supp. 2d 800 (N.D. Ohio 2006) .................................... 9

*Time, Inc.* v. *Hill,* 385 U.S. 374 (1967) ................................................................. 17

*Tolentino* v. *Mossman*, No. 2:07-CV-1243-GEB-DAD, 2007 WL 4404447 (E.D. Cal. Dec. 13, 2007) ........................................................................................ 13

*Ultramares Corp.* v. *Touche*, 174 N.E. 441 (N.Y. 1931) ...................................... 4n, 6, 8

iv

THE MCGRAW-HILL COMPANIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 2:09-CV-00543-JAM-DAD

*Vanguard Municipal Bond Fund, Inc.* v. *Cantor, Fitzgerald L.P.*, 40 F. Supp. 2d 183 (S.D.N.Y. 1999) ................................................................ 6

*Vess* v. *Ciba-Geiby Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ............................ 10

*Water Street Leasehold LLC* v. *Deloitte & Touche LLP*, 796 N.Y.S.2d 598 (1st Dep't 2005) ................................................................................ 11-12

*Wynn* v. *AC Rochester*, 273 F.3d 153 (2d Cir. 2001) ............................................ 13n, 14

*In re Wyse Technology Securities Litigation*, 744 F. Supp. 207 (N.D. Cal. 1990) ........................................................................................ 14

## Constitutional Provisions

U.S. Const. amend. I ................................................................................ passim

## Rules

Fed. R. Civ. P.

9(b) ........................................................................................ 3n, 10, 12n
12(b) ...................................................................................... 1n
12(b)(6) .................................................................................... 1-2

## Statutes

Judicial Code

28 U.SC. § 1441 (2006) ........................................................................ 1n

## Other Authorities

Restatement (Second) of Torts (1977) ........................................................ 4, 8-9

1       Defendant The McGraw-Hill Companies, Inc. ("McGraw-Hill"), respectfully submits this

2  memorandum in support of its motion seeking dismissal of the claims asserted against it by

3  Plaintiffs, Ronald and Sally Grassi.  Plaintiffs' allegations against McGraw-Hill fail to state a

4  claim upon which relief can be granted and should be dismissed with prejudice pursuant to Fed.

5  R. Civ. P. 12(b)(6).[1]

6                        **INTRODUCTION**

7       Plaintiffs allege that the three defendants in this action — Standard & Poor's Ratings

8  Services LLC ("S&P"), a credit rating agency wholly owned by McGraw-Hill, and two other

9  credit rating agencies — "over-rated the quality and value" of two bonds sold by Lehman

10  Brothers Holdings Inc. ("Lehman").  Plaintiffs do not allege that they had a contractual

11  relationship — or contact of any kind — with S&P, Moody's, or Fitch (collectively, the "Rating

12  Agencies").  Nor do they allege that any of the Rating Agencies' ratings were specifically

13  intended for their benefit, or that they considered these ratings in connection with any investment

14  decision.  Instead, the Complaint contains one paragraph of substantive allegations, stating that:

15
16           [Defendants were] the legal (proximate) cause of damages to
            plaintiff . . . Said defendants negligently over-rated the quality and
17           value of the bonds described below being sold by Lehman Bros.
            knowing that potential investors and investment advisors would
18           rely on the ratings and would not know said ratings were inaccurate
            and excessively high. Said conduct by defendants was done for the
19           purpose of both assisting Lehman Bros. in the sale of said bonds,
            and also allowing said defendant rating companies to retain the
20           rating business of investments being sold by Lehman Bros. by
            supplying inaccurate and excessively high bond ratings. . . .

21

22  Plaintiffs also assert a cause of action for "fraud and deceit," but the Complaint makes no

23  additional allegations in support of that claim, other than to substitute "intentionally" for

24
            ——————————————
25    [1]   This action was filed in the Superior Court of California, Placer County, on January 26, 2009.  On
    February 25, 2009, McGraw-Hill, Moody's Investor's Service, Inc. ("Moody's") and Fitch, Inc.
26    ("Fitch") removed this case to the United States District Court for the Eastern District of California
    pursuant to 28 U.S.C. § 1441.  On May 15, 2009, Magistrate Judge Dale A. Drozd held that the
27    District Court has jurisdiction to hear this case.  None of the Defendants in this action has filed a
    responsive pleading or motion to dismiss pursuant to Fed. R. Civ. P. 12(b), and no discovery has taken
28    place.

"negligently" in the above-quoted language.

As demonstrated below, Plaintiffs have not alleged -- and under no circumstances could allege -- facts sufficient to state a claim against S&P for either negligent misrepresentation or fraud.  Specifically, their claims must be dismissed in their entirety because:

- As demonstrated in Section I.A below, plaintiffs have not alleged (and cannot allege) that they were in privity or its "functional equivalent" with any of the Rating Agencies, and thus cannot establish that S&P owed them a duty of care for purposes of proving negligent misrepresentation under governing New York law.  As shown in Section I.B, even if the Court were to apply California law, the Complaint would still fail to allege a duty of care because there is no allegation (nor could there be) that Plaintiffs were part of a limited group of intended beneficiaries of the ratings on Lehman bonds.  In either case, Plaintiffs' claim for negligent misrepresentation must be dismissed.

- As demonstrated in Sections II and III, Plaintiffs have failed to allege — with particularity, as they must — the other elements of negligent misrepresentation, or any of the elements necessary to state a claim for fraud.

- As demonstrated in Section IV, even if Plaintiffs had otherwise made allegations sufficient to state a claim for negligent misrepresentation or fraud, their claims would still be barred by fundamental constitutional principles that have been applied to credit ratings, such as those at issue here, by courts around the country, including that (i) credit ratings are protected statements of opinion and, as such, cannot be proven false and cannot form the basis of actionable claims; and (ii) credit ratings are otherwise entitled to the protections of the First Amendment's actual malice standard.[2]

## STANDARD OF REVIEW

While a Plaintiff need not allege "'[d]etailed factual allegations'" to survive a motion to dismiss under Rule 12(b)(6), it is settled that "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," do not suffice.  *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937,

---

[2]  Although Plaintiffs' negligence allegations follow the heading "General Negligence" on their form Complaint, we treat those claims herein as negligent misrepresentation because Defendants' alleged misconduct lay in the dissemination of their ratings to "potential investors and investment advisors." *See* Complaint.  *See also Bily* v. *Arthur Young & Co.*, 3 Cal. 4th 370, 413 (1992) ("Because the audit report, not the audit itself, is the foundation of the . . . claim, negligent misrepresentation more precisely captures the gravamen of the cause of action and more clearly conveys the elements essential to a recovery."); *Friedman* v. *Merck & Co.*, 107 Cal. App. 4th 454, 475 (Ct. App. 2003) (The court agreed with the defendants' assertion that the cause of action labeled "negligence" more precisely alleged "negligent misrepresentation" because the focus of the complaint was on the "defendants' representations and the plaintiff's reliance on them").

THE McGRAW-HILL COMPANIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 2:09-CV-00543-JAM-DAD

1  1940 (2009) (citation omitted).  *See also Rick-Mik Enterprises, Inc.* v. *Equilon Enterprises, LLC*,

2  532 F.3d 963, 975 (9th Cir. 2008) ("'[A] formulaic recitation of the elements of a cause of action

3  will not do.'") (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007)).  Put another

4  way, a complaint must be dismissed unless the plaintiff has pleaded "factual content [that] allows

5  the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

6  *Iqbal*, 129 S. Ct. at 1940.  Here, where the Complaint alleges negligent misrepresentation and

7  fraud, the standard is even higher, requiring *particularized* allegations including "the time, place

8  and content" of each allegedly deceitful statement.  *In re Glenfed, Inc. Securities Litigation*, 42

9  F.3d 1541, 1547-48 (9th Cir. 1994); *Meridian Project Systems, Inc.* v. *Hardin Construction*

10  *Co.*, *LLC,* 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005).[3]

11      Applying these standards, it is plain for the reasons detailed below that Plaintiffs have

12  failed to state a claim against S&P as a matter of law.

13  **I.   PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM MUST BE**
    **DISMISSED BECAUSE S&P DID NOT, AS A MATTER OF LAW, OWE**
14  **EITHER OF THEM A DUTY OF CARE**

15      Plaintiffs fail to state a claim for negligent misrepresentation against S&P as a matter of

16  law because they have not alleged — and cannot allege — that S&P owed them a duty of care, a

17  prerequisite to any negligence claim.  Under New York law, which governs, there can be no duty

18  of care and thus no claim for negligence unless the plaintiff was in privity or the "functional

19  equivalent of privity" with the defendant.  No such relationship between S&P and Plaintiffs has

20  been, or could be, pleaded here.  In fact, the Complaint does not include a single allegation of *any*

21  interaction or relationship between any of the Rating Agencies and either of the Plaintiffs.  As

22  demonstrated in Section I.A, the application of New York law to preclude Plaintiffs' negligent

23  _____

24  [3]  Although *pro se* plaintiffs may be "held to . . . less stringent standard[s] than formal pleadings drafted
    by lawyers," *see Chapman* v. *Chronicle*, No C 07-4775 SBA, 2009 WL 102821, at *3 (N.D. Cal.
    Jan. 14, 2009) (citing *Erikson* v. *Pardus*, 551 U.S. 89 (2007)), we note that one of the plaintiffs —
25  Ronald Grassi — is a retired attorney.  Moreover, it is well established that a *pro se* litigant's status as
    such "does not relieve the party of the burden of alleging sufficient facts on which a recognized legal
26  claim could be based" and that "[b]ald assertions and conclusions of law will not suffice."  *See*
    *Chapman*, 2009 WL 102821, at *2 (citation and internal quotation marks omitted).  *See also Edwards*
27  v. *Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004) (affirming dismissal of *pro se* plaintiff's
    RICO fraud claim for failure to comply with the requirements of Rule 9(b)).

28

THE MCGRAW-HILL COMPANIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 2:09-CV-00543-JAM-DAD

1  misrepresentation claim against S&P could hardly be more straightforward.[4]

2         The same is true under California law, which has adopted the Restatement (Second) of

3  Torts § 552 (1977) to govern claims of negligent misrepresentation.  As set forth in Section I.B

4  below, Section 552 restricts recovery for negligent misrepresentation to those plaintiffs who can

5  prove that they were part of a "limited group" for whose benefit the information was

6  disseminated.  Here, Plaintiffs do not, and cannot, make any such allegation.  Indeed, there is

7  nothing in the Complaint that could be read to differentiate Plaintiffs from the vast number of

8  other market participants who could have taken account of S&P's ratings on Lehman bonds.

9  Section 552 prohibits liability to such an "unlimited group," rendering Plaintiffs' negligent

10  misrepresentation claim insufficient as a matter of law even if the law of California were to apply.

11     **A.    Plaintiffs Fail To State A Claim Because They Have Not Alleged That
                They Were In Privity Or Its Functional Equivalent With S&P**

12

13         Over 70 years of New York precedent leaves no doubt that liability for negligent

14  misrepresentation can exist only where there is privity or a "bond . . . so close as to approach that

15  _____

16  [4]   California's choice of law rules support the application of New York law to Plaintiffs' claim for
        negligent misrepresentation.  *See Kearney* v. *Salomon Smith Barney, Inc.*, 39 Cal.4th 95, 115-28

17     (2006) (favoring law of the jurisdiction whose interest would be more impaired if its law were not
        applied).  S&P is located in New York and the S&P ratings and publications regarding Lehman were

18     issued and disseminated from New York.  *See, e.g.,* June 15, 2009 Declaration of David Biderman
        ("Biderman Decl."), Exhibit 1 (*Research Update: Lehman Brothers Holdings Inc. Rating Lowered to

19     'D,'* dated Sept. 16, 2008) at page 1 (listing New York as the location of the credit analysts who rated
        the Lehman senior unsecured shelf registration).  The Court may consider this report, which contains

20     S&P's ratings on various bonds issued by Lehman, including ratings on the senior unsecured shelf
        registration (*see* Biderman Decl., Exhibit 1 at page 2) described in the Complaint.  *See, e.g.,  Branch* v.

21     *Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (recognizing that on a motion to dismiss, court may consider
        documents referenced in the complaint that are central to the plaintiff's claims), *overruled on other

22     grounds by Galbraith* v. *County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002).

        As set forth herein, New York has a long history of promoting the broad dissemination of information
23     to the marketplace, *see, e.g., Jaillet* v. *Cashman*, 189 N.Y.S. 743 (Sup. Ct. N.Y. Co. 1921), *aff'd*, 139
        N.E. 714 (N.Y. 1923); *Daniel* v. *Dow Jones & Co.*, 520 N.Y.S.2d 334, 336 (N.Y.C. Civ. Ct. 1987);

24     *First Equity Corp.* v. *Standard & Poor's Corp.*, 670 F. Supp. 115 (S.D.N.Y. 1987), *aff'd*, 869 F.2d
        175 (2d Cir. 1989), and its policy of requiring a special relationship before liability will attach in

25     connection with such dissemination has been well-settled for more than 70 years.  *See Ultramares
        Corp.* v. *Touche*, 174 N.E. 441, 446 (N.Y. 1931).  *See generally Compuware Corp.* v. *Moody's

26     Investors Services., Inc.*, 222 F.R.D. 124, 133-34 (E.D. Mich. 2004) (applying New York law in case
        involving Moody's, based on application of a choice of law rule comparable to California's

27     governmental interest test).  In any event, we address herein the laws of both New York and
        California, both of which require dismissal of Plaintiffs' claims.

28

4

1  of privity" between the plaintiff and the defendant.  *See Ultramares Corp.* v. *Touche*, 255 N.Y.

2  170, 182-83 (N.Y. 1931).  In this case, Plaintiffs have not and obviously cannot allege actual

3  privity with S&P.  Nor have they alleged (nor can they allege) the alternative near-privity

4  required by *Ultramares*, which has been defined as "(1) awareness that the [allegedly negligent

5  representations] were to be used for a particular purpose or purposes; (2) reliance by a known

6  party or parties in furtherance of that purpose; and (3) some conduct by the defendants linking

7  them to the party or parties and evincing defendant's understanding of their reliance."  *See*

8  *Ossining Union Free School District* v. *Anderson LaRocca Anderson*, 539 N.E.2d 91, 95 (N.Y.

9  1989) (citing *Credit Alliance Corp.* v. *Andersen & Co.*, 483 N.E.2d 110, 118 (N.Y. 1985)).

10  Applying this test, it is clear that Plaintiffs' claim for negligent misrepresentation must be

11  dismissed.

12       The *Ultramares* standard was applied by New York's highest court in *Credit Alliance*, a

13  case that is particularly instructive here.  In *Credit Alliance*, the plaintiffs alleged that they had

14  made loans to a company in reliance on the defendants' audit reports, which had certified that the

15  company's financial statements complied with applicable standards.  Less than two years after the

16  plaintiffs made their loans, the company was forced into bankruptcy, resulting in considerable

17  losses for the plaintiffs.  In their complaint, the plaintiffs alleged that the accountants' reports

18  "overstated [the company's] assets, net worth and general financial health" and that the

19  accountants "failed to conduct investigations in accordance with proper auditing standards,

20  thereby failing to discover [the company's] precarious financial condition and the serious

21  possibility that [the company] would be unable to survive as a going concern."  *Credit Alliance*,

22  483 N.E.2d at 111-12.  The plaintiffs further alleged that the accounting firm "specifically knew,

23  should have known or was on notice" that the construction company was going to show the audit

24  reports to the plaintiffs in order to induce their reliance on the reports.  *Id.* at 119.  The court

25  dismissed the plaintiffs' claim on the grounds that they had not alleged that the defendant (i)

26  prepared the reports for the "particular purpose" of inducing the plaintiffs' reliance, (ii) had any

27  "direct dealings" with the defendant, (iii) had "specifically agreed" to prepare the reports for the

28

plaintiffs' intended use, or (iv) had "specifically agreed" to provide the plaintiffs with a copy of the reports.  *Id.*

This rule still governs negligent misrepresentation claims under New York law, and courts have consistently adhered to it, repeatedly dismissing claims where the plaintiff and defendant were not in privity or its functional equivalent.  *See, e.g., Vanguard Mun. Bond Fund, Inc*. v. *Cantor, Fitzgerald L.P.*, 40 F. Supp. 2d 183, 189-95 (S.D.N.Y. 1999) (rejecting claim for negligent misrepresentation brought against a group of brokers arising out of alleged errors in the pricing of a bond index on grounds that the plaintiff was "not specifically known" to the defendants but was merely "a member of the general investing public" that had "absolutely no contact with the [defendants]").  *See also Security Pacific Business Credit, Inc.* v. *Peat Marwick Main & Co.*, 79 N.Y.2d 695, 704-08 (N.Y. 1992); *IT Corp.* v. *Ecology and Environmental Engineering, P.C.*, 713 N.Y.S.2d 633, 636 (4th Dep't 2000); *Melnick* v. *Parlato*, 745 N.Y.S.2d 68, 68 (2d Dep't 2002); *MS Partnership* v. *Wal-Mart Stores, Inc.*, 741 N.Y.S.2d 793, 794-95 (4th Dep't 2002).

There are compelling policy justifications for this rule.  In *Ultramares*, then Judge Cardozo observed that a rule allowing plaintiffs to state a claim for negligent misrepresentation absent privity or its functional equivalent would expose the speaker to the unacceptable prospect of "liability in an indeterminate amount for an indeterminate time to an indeterminate class." *Ultramares*, 255 N.Y. at 444.  In the seminal case of *Jaillet* v. *Cashman*, 189 N.Y.S. 743, 744 (Sup. Ct. N.Y. Co. 1921), *aff'd*, 139 N.E. 714 (N.Y. 1923), the court similarly recognized that an investor who relied to his detriment on incorrect information disseminated by that party's news ticker service could not state a claim against the ticker service because he was "but one of a public to whom all news is liable to be disseminated" and that any other rule would make the defendant potentially liable "to every member of the community who was misled by the incorrect report."  *See also Daniel*, 520 N.Y.S.2d at 336 (dismissing claim that investment service negligently distributed false statements to over 200,000 subscribers and non-subscribers because, "as a matter of public policy, the class of potential plaintiffs must be carefully circumscribed to avoid the potential of unlimited liability").

THE MCGRAW-HILL COMPANIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 2:09-CV-00543-JAM-DAD

These principles have been applied directly to dismiss a negligent misrepresentation claim against S&P and other credit rating agencies.  In 2005, the court overseeing the multidistrict litigation involving Enron Corp. rejected a claim based on allegations similar to (although far more detailed than) those before this court.  *See In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 511 F. Supp. 2d 742, 808-27 (S.D. Tex. 2005).  The plaintiff in *Enron* alleged that the rating agencies "failed to exercise reasonable care or competence in obtaining and communicating accurate information concerning the creditworthiness of Enron" and that they published "false and misleading credit information" concerning the company.  *Id.* at 809. Applying Connecticut law, which turns in large part on public policy considerations, the court found that the rating agencies owed no duty of care because the plaintiff failed to allege any contact with the rating agencies regarding plaintiffs' transaction with Enron, and was thus no different than any of the countless investors, counterparties and others who might have consulted ratings on Enron.  *Id.* at 826-27.  The court identified the strong public policy reasons not to expose rating agencies to potentially unlimited liability:

> This Court has previously discussed the significant r[o]le played by the Credit Rating Agencies in the efficient operation of capital markets, which would be chilled by unlimited potential liability for creditworthiness ratings, while public policy clearly encourages 'continued vigorous participation in the activity.' . . . [A]llowing anyone to sue credit rating agencies who had read the credit rating reports and claimed to have relied upon them and lost money in any endeavor that person undertook would be far more deleterious than beneficial to society as a whole.

*Id.* at 827 (citation omitted).  The court also recognized the serious chilling effect that would result if any plaintiff that claimed to have relied on defendants' credit ratings could state a claim for negligent misrepresentation:

> To vigorously participate in the credit rating industry, which provides useful information for investors, Rating Agencies must be allowed to maintain independence and objectivity and not be swayed by risk of unlimited liability for errors to either issuers or investors; instead the market should be the appropriate means for ensuring the reliability of credit opinions and of rating agencies.

1   *Id.* at 815.  Finding that no duty of care existed — or could have existed — between plaintiff and

2   the rating agencies, the court dismissed the plaintiff's claim with prejudice.  *Id.* at 827.

3          In this case, as in the *Enron* case, Plaintiffs do not — and cannot — make allegations that

4   would differentiate themselves from any of the other "potential investors and investment

5   advisors" (Complaint at 1) who might claim to have relied on S&P's ratings on Lehman bonds.

6   They have not alleged (and, once again, they cannot allege) that S&P published its Lehman

7   ratings for the "particular purpose" of inducing reliance by them, that they had any "direct

8   dealings" with S&P, that S&P "specifically agreed" to prepare its ratings on Lehman bonds for

9   their intended use, or that S&P had "specifically agreed" to provide them with a copy of the

10  ratings.  *Ultramares* at 553.

11         Thus, in accordance with well-established New York law, Plaintiffs' claim for negligent

12  misrepresentation must be dismissed.

13  ### B.       Plaintiffs Fail To Plead A Duty Of Care Under California Law

14         Plaintiffs' negligent misrepresentation claim similarly fails under the law of California,

15  which has adopted the requirements of Section 552 of the Restatement (Second) of Torts (1977).

16  *See Bily*, 3 Cal. App. 4th at 407-15.  Section 552 provides that liability for negligent

17  misrepresentation "is limited to loss suffered . . . by the person or one of a limited group of

18  persons for whose benefit and guidance" information is provided.  *See* Restatement (Second) of

19  Torts § 552; *see also Bily*, 3 Cal. App. 4th at 408-12.  Similar to the *Ultramares* rule discussed

20  above, the "limited group" requirement is designed to "promote[] the important social policy of

21  encouraging the flow of commercial information upon which the operation of the economy rests."

22  Restatement § 552 cmt a.  Here, Plaintiffs do not allege any facts on which to infer that they were

23  a member of any limited group of intended beneficiaries of S&P's ratings on Lehman bonds.

24         The California Supreme Court held in *Bily* that Section 552 limits liability for negligent

25  misrepresentation to situations where information is transferred "with the intent to induce

26  plaintiff, or a particular class of persons to which plaintiff belongs, to act in reliance upon the

27  representation in a specific transaction, or a specific type of transaction, that defendant intended

28  to influence."  Although the *Bily* case involved accountants, other courts in California have also

8

ipped

1    adopted Section 552 and applied it in a variety of contexts.  *See, e.g.*, *B.L.M.* v. *Sabo & Deitsch*,

2    55 Cal. App. 4th 823, 834-41 (Ct. App. 1997) (lawyers); *FSR Brokerage, Inc.* v. *Superior Court*,

3    35 Cal. App. 4th 69, 73-74 (Ct. App. 1995) (real estate brokers).  *See also Bily*, 3 Cal. App. 4th at

4    410 ("Accountants are not unique in their position as suppliers of information and evaluations for

5    the use and benefit of others. . . . [L]ike auditors, [other] professionals may also face suits by third

6    persons claiming reliance on information and opinions generated in a professional capacity.")

7           An instructive and frequently-cited case applying the principles of Section 552 is *Gutter* v.

8    *Dow Jones, Inc.*, 490 N.E.2d 898 (Ohio 1986), in which the court dismissed a negligent

9    misrepresentation claim brought against a newspaper by an investor.  The plaintiff claimed to

10   have relied to his detriment on a report in the newspaper that certain corporate bonds were

11   "trading with interest."  He alleged that the defendant publisher "knew, or should have known"

12   the report was inaccurate and that it published the report "with the intent that investors rely" on it

13   in making financial decisions.  *Id*. at 899.  Dismissing the claim, the court concluded that "as a

14   newspaper reader, appellee does not fall within a special limited class (or group) of foreseeable

15   persons as set forth in Section (2)(a) [of Section 552]."  *Id.  See also Ginsburg* v. *Agora, Inc.*, 915

16   F.Supp. 733, 739 (D. Md. 1995) (dismissing negligent misrepresentation claim on grounds that

17   "[t]he publication is offered to the general public and the information provided in the publication

18   is of a general nature, that is, it is not specifically tailored to [the] financial situation of any

19   individual subscriber"); *Stancik* v. *CNBC*, 420 F. Supp. 2d 800, 807-08 (N.D. Ohio 2006)

20   (granting motion to dismiss action brought by viewer against financial cable television network,

21   noting that "[a] contrary result would in effect extend liability to all the world and not a limited

22   class").  *See also Enron*, 511 F. Supp. 2d at 826-27 (dismissing negligent misrepresentation claim

23   against the rating agencies under Connecticut law, based on principles of "limited group"

24   comparable to those underlying Section 552).

25          Here, Plaintiffs do not — and cannot — allege that they are any different than the many

26   "potential investors and investment advisors" (*see* Complaint at 2), who might have had access to

27   S&P's rating opinions.  Accordingly, Plaintiffs' claim for negligent misrepresentation must be

28   dismissed.

9

1

**II.    PLAINTIFFS HAVE FAILED TO PLEAD ADDITIONAL ELEMENTS
NECESSARY TO STATE A CLAIM FOR NEGLIGENT
MISREPRESENTATION**

2

3       In addition to a duty of care, plaintiffs alleging negligent misrepresentation are also

4   required to demonstrate that "([i]) defendant made a false representation that he or she should

5   have known was incorrect; ([ii]) the information supplied in the representation was known by the

6   defendant to be desired by the plaintiff for a serious purpose; ([iii]) the plaintiff intended to rely

7   and act upon it; and ([iv]) the plaintiff reasonably relied on it to his or her detriment." *Hydro*

8   *Investors, Inc.* v. *Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).  *See also King* v.

9   *Crossland Savings Bank,* 111 F.3d 251, 257-58 (2d Cir. 1997) (citations omitted).[5]  Plaintiffs

10  have not alleged facts to support these elements under any standard, much less the heightened

11  standard that applies to claims for negligent misrepresentation.  *See Meridian Project Systems*,

12  404 F. Supp. 2d at 1219 ("[I]t is well-settled in the Ninth Circuit that misrepresentation claims are

13  a species of fraud, which must meet Rule 9(b)'s particularity requirement.").  *See also Aetna*

14  *Casualty and Surety* v. *Aniero Concrete Co.*, 404 F.3d 566, 583-85 (2d Cir. 2005) (applying Rule

15  9(b) to negligent misrepresentation claim brought under New York law).

16      To comply with Rule 9(b), it is not sufficient for a plaintiff simply to plead the elements

17  of a tort.  Instead, a complaint must provide the circumstances underlying the alleged

18  misrepresentation, including not only "the time, place and content" of each statement, but also the

19  "circumstances indicating falseness."  *Glenfed*, 42 F.3d at 1547-48.  *See also Meridian Project*

20  *Systems*, 404 F. Supp. 2d at 1219-20.  Put another way, the "averments of fraud must be

21  accompanied by 'the who, what, when, where and how' of the misconduct [alleged] in the

22  complaint."  *See Meridian Project Systems*, 404 F. Supp. 2d at 1219 (citing *Vess* v. *Ciba-Geiby*

23  *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

24      Although Plaintiffs generally assert that the Rating Agencies "over-rated" Lehman bonds

25  and supplied "inaccurate and excessively high bond ratings," the Complaint does not even begin

26  to plead the time, place and contents of any particular false statement.  Indeed, the Complaint

27

---

[5]     These remaining elements are essentially the same under the laws of New York and California.  *See
Bily*, 3 Cal.4th at 407.

28

10

1   does not allege anything about the ratings themselves and certainly does not explain *why* or *how*

2   any rating by S&P or the other Rating Agencies constitutes a false statement.  For this reason

3   alone, the negligent misrepresentation claim should be dismissed.  *Id.* at 1220 (dismissing

4   negligent misrepresentation allegations that did not describe "when, where or to whom the

5   misrepresentations were made, or provide any other details that would afford counterdefendants

6   an opportunity to rebut the charges").

7        Nor is there, or could there be, any allegation in the Complaint that S&P knew that these

8   particular Plaintiffs would use its ratings on Lehman bonds for any particular purpose, another

9   essential element, the absence of which constitutes grounds for dismissal.  *See Bily*, 3 Cal.4th at

10  414-15.  *See also Credit Alliance Corp.*, 483 N.E.2d at 119.

11       Nor is there any allegation in the complaint -- much less a particularized allegation -- that

12  Plaintiffs actually relied on S&P's ratings in connection with any investment in Lehman bonds.

13  This failure, as well, warrants dismissal of the claim for negligent misrepresentation.  *See Bily*, 3

14  Cal.4th at 413 ("[W]e emphasize the indispensability of justifiable reliance on the [alleged

15  misstatements].");  *Water Street Leasehold LLC* v. *Deloitte & Touche LLP*, 796 N.Y.S.2d 598,

16  599-600 (1st Dep't 2005) ("An essential element of any fraud or negligent misrepresentation

17  claim is that there must be reasonable reliance, to a party's detriment, upon the representations

18  made.");  *Crossland Savings Bank*, 111 F.3d at 258-59;  *Gutierrez* v. *Wells Fargo & Co.*, No. C

19  07-05923, 2009 WL 1246689, at *3 (N.D. Cal. May 5, 2009).

20       Furthermore, even if Plaintiffs had alleged that they relied on S&P's ratings on Lehman

21  bonds, as a matter of law, they could not allege that such reliance was reasonable.  That is

22  because S&P's reports on Lehman's bonds contained the following express cautionary language

23  about the nature of S&P's rating opinions and their proper use.

24
>           The credit ratings and observations contained herein are solely
>           statements of opinion and not statements of fact or
25          recommendations to purchase, hold, or sell any securities or make
>           any other investment decisions.  Accordingly, any user of the
26          information contained herein should not rely on any credit rating or
>           other opinion contained herein in making any investment decision.
27          *See* Biderman Decl., Exh. 1 at page 3.

28

THE MCGRAW-HILL COMPANIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 2:09-CV-00543-JAM-DAD

1  This clear and unambiguous disclaimer provides an independent ground for dismissal of

2  Plaintiffs' claims as a matter of law. *See Quinn* v. *McGraw-Hill Cos.*, 168 F.3d 331, 336 (7th

3  Cir. 1999) (affirming dismissal of a misrepresentation claim against S&P on grounds that investor

4  "was responsible for doing his own homework about the risks he was assuming" and was on

5  notice that an S&P rating was "'not a recommendation to buy, sell, or hold" a security).

6        Finally, Plaintiffs have failed to allege with any specificity that the ratings published by

7  S&P or the other Rating Agencies were the cause of their alleged injury. *See Mirkin* v.

8  *Wasserman*, 5 Cal.4th 1082, 1092 (1993) (observing that a plaintiff must plead and prove "a

9  complete causal relationship' between the alleged misrepresentations and the harm claimed to

10  have resulted therefrom.") (quoting *Garcia* v. *Superior Court*, 50 Cal.3d 728, 737 (1990)). *See*

11  *also Water Street*, 796 N.Y.S.2d at 599-600 ("'[P]laintiff must show both that defendant's

12  misrepresentation induced plaintiff to engage in the transaction in question (transaction causation)

13  and that the misrepresentations directly caused the loss about which plaintiff complains (loss

14  causation).'") (quoting *Laub* v. *Faessel,* 745 N.Y.S.2d 534 (1st Dep't 2002)).

15        Because Plaintiffs have failed to plead these necessary elements with anything

16  approaching the requisite particularity, their negligent misrepresentation claim must be

17  dismissed.[6]

18  **III.    PLAINTIFFS HAVE FAILED TO ALLEGE THE ELEMENTS**
19  **NECESSARY TO STATE A CLAIM FOR FRAUD**

20        For reasons similar to those set forth in Section II, Plaintiffs have not — and cannot —

21  plead the elements necessary to state a claim for fraud under California law, *i.e.*, that: (i) S&P

22  knowingly made a material misrepresentation; (ii) it intended for Plaintiffs to rely on that

23

24

25  _____

26  [6]      Even without the heightened pleading requirements of Rule 9(b), the Complaint would fail to state any claim against S&P because it does not even satisfy the generally applicable pleading standards under Rule 8, which require sufficient factual allegations "to raise the right to relief above the speculative level."

27  *Twombly*, 550 U.S. at 555. *See also Iqbal*, 129 S. Ct. at 1949 (requiring "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

28

1   statement; (iii) Plaintiffs did justifiably rely on the statement; and (iv) Plaintiffs were injured as a

2   result.  *See Robinson Helicopter Co.* v. *Dana Corp.*, 34 Cal.4th 979, 990 (2004).[7]

3           Just as Plaintiffs are required to specify the allegedly false statement and related

4   misconduct supporting their claim for negligent misrepresentation, they must also plead the "who,

5   what, when, where and how" of their fraud claim.  Yet, Plaintiffs' Complaint is so lacking in

6   specificity that it fails even to identify the role played by each Defendant and the specific

7   fraudulent conduct that forms the basis of Plaintiffs' claim as to each.  This is a fatal flaw which

8   alone requires dismissal of Plaintiffs' fraud claim.  *Tolentino* v. *Mossman*, No. 2:07-cv-1243-

9   GEB-DAD, 2007 WL 4404447, at *5 (E.D. Cal. Dec. 13, 2007) ("Fraud allegations are not stated

10  with particularity if the allegations 'indiscriminately group[ ] all of the individual defendants into

11  one wrongdoing monolith . . . Fraud allegations may not rely on blanket references to conduct of

12  'defendants and each of them,' but must instead inform each defendant of the conduct which

13  constitutes the alleged violation.") (quoting *Lubin* v. *Sybedon Corp.*, 688 F. Supp. 1425, 1443

14  (S.D. Cal. 1988)).  *See also Bruns II* v. *Ledbetter*, 583 F. Supp. 1050, 1052 (S.D. Cal. 1984)

15  ("[T]here is ample authority for defendants' position that those seeking redress must distinguish

16  among those they sue and enlighten each defendant as to his or her part in the alleged fraud.");

17  *DiVittorio* v. *Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where

18  multiple defendants are asked to respond to allegations of fraud, the complaint should inform

19  each defendant of the nature of his alleged participation in the fraud.").  Here, the entirety of

20  Plaintiffs' fraud allegations constitute a broad statement of falsity with respect to unspecified

21  ratings by "defendants."  That is simply insufficient as a matter of law.

22          Plaintiffs' fraud claim must be dismissed for the additional reason that the Complaint does

23  not plead with specificity that any Defendant, including S&P, acted with scienter, *i.e.,* that it

24

25  _____

    [7]      We cite California law in this section because, unlike the law regarding negligent misrepresentation,
26  there is no substantive difference between the laws of New York and California.  *See Wynn* v. *AC
    Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) ("Under New York law, to state a claim for fraud a plaintiff
27  must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be
    false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff
28  reasonably relied; and (5) which caused injury to the plaintiff.")

THE MCGRAW-HILL COMPANIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 2:09-CV-00543-JAM-DAD

1    *knowingly* published "inaccurate" ratings on Lehman bonds.  *See Robinson Helicopter*, 34 Cal.4th

2    at 990; *Wynn*, 273 F.3d at 156.  While conditions of mind may be pleaded generally, "nothing in

3    the Federal Rules of Civil Procedure relieves a plaintiff of the obligation to 'set forth facts from

4    which an inference of scienter could be drawn.'"  *In re Actimmune Marketing Litigation*, No. C

5    08-02376-MHP, 2009 WL 1139585, at *9 (N.D. Cal. Apr. 28, 2009) (quoting *Cooper* v. *Pickett*,

6    137 F.3d 616, 628 (9th Cir. 1997)).  *See also Iqbal*, 129 S. Ct. at 1940 ("Threadbare recitals of a

7    cause of action's elements, supported by mere conclusory statements," do not suffice.).  Thus, it

8    is not sufficient for Plaintiffs merely to recite an allegation, as they do, that S&P acted

9    "intentionally."  They are required instead to allege "factual content" that S&P actually had

10   knowledge that it had "over-rated the quality and value" of Lehman bonds.  *See Twombly*, 550

11   U.S. at 556.  *See also In re Wyse Technology Securities Litigation*, 744 F. Supp. 207, 208 (N.D.

12   Cal. 1990) (dismissing fraud claim because the plaintiffs did not "identify the source of their

13   information and belief that defendants' intent was fraudulent or that their statements were

14   materially incorrect.").  Because Plaintiffs have not — and with particularity and in good faith

15   cannot — make such allegations, their fraud claim must be dismissed.

16   **IV.    PLAINTIFFS' CLAIMS ARE BARRED BY THE FIRST AMENDMENT**

17           Plaintiffs' claims must be dismissed on the additional basis that they are barred by

18   fundamental principles of constitutional law.  As explained below, courts have repeatedly held

19   that the credit ratings issued by S&P and the other Rating Agencies are, by their nature, forward-

20   looking statements of opinion, as opposed to statements of fact.  As such, credit ratings are

21   entitled to receive full constitutional protection under the First Amendment to the United States

22   Constitution.  Alternatively, other courts have found that credit ratings merit protection under the

23   actual malice standard arising under the First Amendment.  In this regard, courts have held that

24   S&P and other credit rating agencies are entitled to the same constitutional protections as other

25   providers of financial information of public interest and, as such, cannot be liable for their

26

27

28

THE MCGRAW-HILL COMPANIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 2:09-CV-00543-JAM-DAD

1  published statements absent proof that they made the statements with "knowledge of falsity or

2  reckless disregard for the truth."[8]

3      **A.**    **Credit Ratings Are Opinions That Cannot Be Found False**

4      It is well-established that credit ratings are "opinions" that inherently are not capable of

5  being proven true or false.  As the United States Court of Appeals for the Sixth Circuit held in

6  2007 in the context of a rating issued by Moody's:

> 7     A Moody's [credit] rating is a predictive opinion, dependent on a
> 8     subjective and discretionary weighing of complex factors.  We find
>     no basis upon which we could conclude that the credit rating itself
> 9     communicates any provably false connotation. Even if we could
>     draw any fact-based inferences from this rating, such inferences
> 10     could not be proven false because of the inherently subjective nature
>     of Moody's ratings calculation.  *Compuware Corp.* v. *Moody's*
> 11     *Investors Services, Inc.*, 499 F.3d 520, 529 (6th Cir. 2007).

12

13  The Court held that rating opinions could not provide the basis for a cognizable claim premised

14  on their asserted falsity.  *Id.*  Another appellate court reached the same result with respect to an

15  allegedly false analysis that went beyond the rating itself.  *Jefferson Co. Sch. Dist.* v. *Moody's*

16  *Investor's Svcs., Inc.*, 175 F.3d 848, 852 (10th Cir. 1999) (holding that "'a statement of opinion

17  relating to matters of public concern which does not contain a provably false factual connotation

18

19      _____
[8]    The application of First Amendment principles to S&P and other rating agencies is consistent with
20  previous decisions of the Supreme Court establishing the wide scope of the First Amendment with regard
to publications related to "business" or economic issues.  In *Lowe* v. *SEC*, 472 U.S. 181, 210 (1985), for
21  example, the Supreme Court found that there could be "no doubt" that publications containing opinions
about securities were protected by the First Amendment.  *Id.* at 210 n.58 ("[B]ecause we have squarely
22  held that the expression of opinion about a commercial product such as a loudspeaker is protected by the
First Amendment, it is difficult to see why the expression of an opinion about a marketable security should
23  not also be protected.") (citation omitted).  *See also Lovell* v. *Griffin*, 303 U.S. 444, 452 (1938) ("The
liberty of the press is not confined to newspapers and periodicals. . . . The press in its historic connotation
24  comprehends every sort of publication which affords a vehicle of information and opinion.").  Courts of
Appeal have similarly recognized that First Amendment protections extend to a vast array of information
25  providers, including those who publish financial information and opinion.  *See, e.g.*, *In re Petroleum
Products Antitrust Litigation*, 680 F.2d 5, 7-9 (2d Cir. 1982) (holding that Platts' Oilgram Price Service, a
26  financial newsletter, was entitled to First Amendment protections), *cert. denied*, 459 U.S. 909 (1982);
*R&W Technical Services, Ltd.* v. *CFTC*, 205 F.3d 165, 175 (5th Cir.) ("[T]he publication of impersonal
27  advice about specific investments is fully protected under the First Amendment."), *cert. denied*, 531 U.S.
817 (2000).
28

THE MCGRAW-HILL COMPANIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 2:09-CV-00543-JAM-DAD

will receive full constitutional protection'") (quoting *Milkovich* v. *Lorain Journal Co*., 497 U.S. 1, 20 (1990)).

Plaintiffs' allegations that S&P's ratings were "inaccurate and excessively high" cannot be squared with these cases which are in turn rooted in the notion that there is no such thing as a "false idea" or a "false opinion." *See Gertz* v. *Robert Welch, Inc*., 418 U.S. 323, 339-40 (1974) ("[T]here is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."). Based on the same principles set out by the Sixth Circuit in *Compuware* and the Tenth Circuit in *Jefferson County*, dismissal is also required here.[9]

## B. Plaintiffs Have Not Alleged Actual Malice

Another line of cases, also rooted in the First Amendment, provides an additional basis for dismissal. These rulings focus less on the opinion nature of ratings and more on the need to avoid chilling the speech of those who offer ratings lest they refrain from doing so to avoid the dangers of prolonged and potentially crippling litigation. Often, these cases arise in situations where facts as well as opinions are expressed and a plaintiff urges that the facts were erroneous or mistaken. In these cases, the protection frequently afforded is that of requiring that the plaintiff plead and prove "actual malice."[10]

The actual malice standard, first enunciated by the Supreme Court in *New York Times Co*. v. *Sullivan*, 376 U.S. 254, 279-80 (1964), supplies the "breathing-space" the First Amendment requires. *Id*. at 272. Under this standard, a publisher cannot incur liability for an allegedly false

---

[9]     Of course, if Plaintiffs had alleged with particularity, and could prove, that S&P's ratings were not genuine opinions — that is, that S&P did not actually *believe* the opinions it issued — the First Amendment protection for opinions would not apply. Plaintiffs have not and obviously cannot make such allegations.

[10]     S&P's credit rating business is not described with any detail in the complaint, but has been the subject of opinions issued by federal courts around the country which have recognized that, at its core, S&P acts as a financial publisher. *See e.g.*, *In re Scott Paper Co. Securities Litigation*, 145 F.R.D. 366, 367, 369 (E.D. Pa. 1992) ("S&P rates and comments on the creditworthiness of public companies and their securities and disseminates that information to the public. . . . S&P maintains editorial control over the form and content of its publications and over the decision whether to publish any particular rating."); *In re Pan Am Corp*., 161 B.R. 577, 579 (S.D.N.Y. 1993) ("S&P assesses, rates and comments on the creditworthiness of domestic and international corporate and governmental debt instruments.").

16

1  statement unless the statement is made, "with knowledge that the statement was false or with

2  reckless disregard for whether or not it was true." *Hustler Magazine* v. *Falwell*, 485 U.S. 46, 56

3  (1988).  The actual malice standard protects publishers from liability for "either innocent or

4  negligent misstatement," and guards against the "grave hazard of discouraging the press from

5  exercising [its] constitutional guarantees." *Time, Inc.* v. *Hill*, 385 U.S. 374, 389 (1967).

6  Recklessness under the actual malice standard "is not measured by whether a reasonably prudent

7  man would have published, or would have investigated before publishing." *St. Amant* v.

8  *Thompson*, 390 U.S. 727, 731 (1968).  Instead, to show recklessness in the actual malice (*i.e.*

9  "constitutional malice") sense of the phrase, Plaintiffs must plead such actual malice and, if they

10  do so, ultimately present "sufficient evidence to permit the conclusion that the defendant in fact

11  entertained serious doubts as to the truth of his publication." *Id.*; *see also Bose Corp.* v.

12  *Consumer Union of the United States, Inc.*, 466 U.S. 485, 511 n.30 (1984) (stating that there is no

13  "actual malice" unless "the defendant realized that his statement was false or [] *subjectively*

14  entertained serious doubt as to the truth of his statement") (emphasis added); *Church of*

15  *Scientology International* v. *Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (stating that actual malice

16  requires proof of "speaker's *subjective* doubts about the truth of the publication") (emphasis

17  added); *Long* v. *Arcell*, 618 F.2d 1145, 1147 (5th Cir. 1980) ("The test of actual malice is not

18  whether the defendant acting as a reasonable publisher would have acted under the

19  circumstances.  Rather, the inquiry focuses on the defendant's state of mind at the time of

20  publication.").

21       Courts have explicitly held that the actual malice standard applies with full force to claims

22  (like Plaintiffs') made against S&P and other rating agencies regarding their rating opinions.  For

23  example, in *County of Orange*, the plaintiff, Orange County, sued S&P for breach of contract and

24  professional negligence, arising out of allegedly "inaccurate" ratings of the County's debt.  The

25  County claimed that as a result of relying on S&P's ratings, it incurred large debts and was forced

26  to declare bankruptcy.  The court granted S&P's motion for summary judgment in part, finding

27  that the County's debt obligation was a matter of public importance and holding that the claims

28  were subject to the actual malice standard.  *County of Orange* v. *McGraw Hill Cos.*, 245 B.R.

17

151, 157 (C.D. Cal. 1999) (finding that "[b]ecause the County alleges harm arising from S&P's expressive activity," *i.e.*, its published credit ratings, "the County must . . . satisfy the heightened pleading standards of the First Amendment") (internal quotations omitted).

Similarly, in the *Enron* case, plaintiff's failure to plead actual malice provided an independent basis for dismissal of plaintiff's claims against S&P, Moody's, and Fitch.  *See Enron*, 511 F. Supp. 2d at 825 (dismissing claims because plaintiff "ha[d] not alleged facts showing that the Rating Agencies were at fault because they knew or had significant suspicions that their statements were false and thus acted with actual malice").  In reaching its determination, the Court cited, among other authorities, the Supreme Court's decision in *Harte-Hanks Communications, Inc.* v. *Connaughton*, 491 U.S. 657, 688 (1989), which held that "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."

The same result was reached in *First Equity Corp. v. Standard & Poor's Corp.*, 690 F. Supp. 256 (S.D.N.Y 1988), *aff'd on other grounds*, 869 F.2d 175 (2d Cir. 1989).  In that case, the Court granted summary judgment to S&P in a case brought by disgruntled investors who claimed to have relied to their detriment not on S&P's ratings, but on S&P's description of certain convertible bonds in an S&P publication entitled *Corporation Records*.  *Id.* at 256.  Applying traditional First Amendment actual malice, the court found that the plaintiff failed to put forth "'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'"  *Id.* at 259 (quoting *St. Amant*, 390 U.S. at 731).  *See also Compuware Corp.*, 499 F.3d at 526-28 (dismissing claims based on the alleged falsity of a Moody's rating opinion in the absence of actual malice).

Here, Plaintiffs make no allegations that, even on the most generous reading, could satisfy the actual malice test.  Indeed, at most, the Complaint contains a legal conclusion in the portion seeking "[p]unitive damages based upon defendants' reckless disregard in publishing false and misleading information[.]"  *See* Complaint at 3.  Merely repeating the standard, however, is not sufficient to constitute actual malice.  *See Barger* v. *Playboy Enterprises, Inc.*, 564 F. Supp. 1151, 1156 (N.D. Cal. 1983) (holding that conclusory allegation that defendant acted "recklessly" was

18

insufficient to constitute an allegation of actual malice.).  *See also Shamley* v. *ITT Corp.*, 869

F.2d 167, 173 (2d Cir. 1989) (merely asserting that the defendants acted with malice is not

sufficient, for an allegation of malice "must be supported by sufficient evidentiary facts").

Plaintiffs' claims must therefore be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, S&P's motion to dismiss with prejudice the claims asserted

against it in the Complaint should be granted.

June 15, 2009

Respectfully Submitted,


_____/s/_____
Floyd Abrams (admitted *pro hac vice*)
Adam Zurofsky (*pro hac* application to be submitted)
Brian Markley (admitted *pro hac vice*)
Julie A. Allsman (admitted *pro hac vice*)
**CAHILL GORDON & REINDEL LLP**
80 Pine Street
New York, New York  10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420

David T. Biderman (SBN 101577)
Farschad Farzan (SBN 215194)
**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400
San Francisco, CA  94111
Telephone: (415) 344-7000
Facsimile: (415) 344-7050

Attorneys for The McGraw-Hill Companies, Inc.

THE MCGRAW-HILL COMPANIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: 2:09-CV-00543-JAM-DAD