1   David T. Biderman (SBN 101577)
2   Farschad Farzan (SBN 215194)
    **PERKINS COIE LLP**
3   Four Embarcadero Center, Suite 2400
    San Francisco, California  94111
4   Telephone:  (415) 344-7000
    Facsimile:   (415) 344-7050
5   Email: DBiderman@perkinscoie.com
    Email: FFarzan@perkinscoie.com
6
7   Floyd Abrams (admitted *pro hac vice*)
    Adam Zurofsky (admitted *pro hac vice*)
8   Brian T. Markley (admitted *pro hac vice*)
    **CAHILL GORDON & REINDEL LLP**
9   80 Pine Street
    New York, NY 10005
10  Telephone:  (212) 701-3000
    Facsimile:   (212) 269-5420
11
12  *Attorneys for Defendant The McGraw-Hill Companies, Inc.*
13  [Additional counsel listed on signature page]
14
15                  UNITED STATES DISTRICT COURT
16                  EASTERN DISTRICT OF CALIFORNIA
17

18  RONALD M. GRASSI and SALLY GRASSI,    |    Case No. 2:09-cv-00543-JAM-DAD
19                        Plaintiffs,      |    **DEFENDANTS' JOINT
20          v.                            |    MEMORANDUM OF POINTS AND
                                          |    AUTHORITIES IN SUPPORT OF
21  MOODY'S INVESTOR'S SERVICE, INC.,      |    THEIR MOTION TO DISMISS
    THE MCGRAW-HILL COMPANIES, INC.        |    THE AMENDED COMPLAINT**
22  AND FITCH, INC.,                       |
23                        Defendants.      |    Date:    July 9, 2010
                                          |    Time:    10:00 a.m.
24                                        |    Place:   Courtroom 27
                                          |    Judge:   Hon. Dale A. Drozd
25
26
27
28

# TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION ........................................................................................................... 1

STANDARD OF REVIEW ............................................................................................. 3

ARGUMENT ................................................................................................................... 4

I.    PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM MUST BE
      DISMISSED BECAUSE, AS A MATTER OF LAW, DEFENDANTS DID NOT
      OWE THEM A DUTY OF CARE ...................................................................... 4

II.   PLAINTIFFS HAVE FAILED TO PLEAD ADDITIONAL ELEMENTS
      NECESSARY TO STATE A CLAIM FOR NEGLIGENT
      MISREPRESENTATION ................................................................................... 8

III.  PLAINTIFFS HAVE FAILED TO ALLEGE ELEMENTS NECESSARY TO
      STATE A CLAIM FOR FRAUD ....................................................................... 11

IV.   PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM IS BARRED
      BY THE FIRST AMENDMENT ....................................................................... 16

      A.    Credit Ratings Are Public Opinions That Do Not, as a Matter of
            Law, Contain the Requisite "False" Statement of Fact ........................... 16

      B.    Plaintiffs Have Not Alleged Actual Malice ............................................ 17

V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR AIDING AND ABETTING ................ 19

CONCLUSION ................................................................................................................ 21

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: CIV-S-09-00543-JAM-DAD

1

## TABLE OF AUTHORITIES

2

### CASES

3   *Aetna Casualty and Surety Co.* v. *Aniero Concrete Co.,*
        404 F.3d 566 (2d Cir. 2005)........................................................................................ 8

4
    *Anderson* v. *Deloitte & Touche LLP,*
5       56 Cal. App. 4th 1468 (1st Dist. 1997) ................................................................ 11

6   *Arb, Inc.* v. *Luz Construction, Inc.,*
        972 F.2d 1336 (Table), 1992 WL 164487 (9th Cir. 1992)........................................ 20
7
    *Ashcroft* v. *Iqbal,*
8       129 S. Ct. 1937 (2009) ............................................................................................ 3

9   *Barger* v. *Playboy Enterprises, Inc.,*
        564 F. Supp. 1151 (N.D. Cal. 1983), *aff'd,* 732 F.2d 163 (9th Cir. 1984)................ 19
10
    *Bell Atlantic Corp.* v. *Twombly,*
11      550 U.S. 544 (2007) ................................................................................................ 3

12  *Bily* v. *Arthur Young & Co.,*
        3 Cal. 4th 370 (1992) ...................................................................... 5, 7, 8n, 10
13
    *Bledea* v. *Indymac Federal Bank,*
14      2010 WL 715255 (E.D. Cal. Feb. 25, 2010) .......................................................... 15

15  *Bose Corp.* v. *Consumer Union of the United States, Inc.,*
        466 U.S. 485 (1984)................................................................................................ 18
16
    *Bullmore* v. *Ernst & Young Cayman Islands,*
17      846 N.Y.S.2d 145 (1st Dep't 2007) ...................................................................... 20

18  *Cahill* v. *Liberty Mutual Ins. Co.,* 80 F.3d 336 (9th Cir. 1996)................................ 21n

19  *Casey* v. *U.S. Bank National Ass'n,*
        127 Cal. App. 4th 1138 (4th Dist. 2005)................................................................ 21
20
    *Church of Scientology International* v. *Behar,*
21      238 F.3d 168 (2d Cir. 2001)................................................................................ 18

22  *Compuware Corp.* v. *Moody's Investors Services, Inc.,*
        499 F.3d 520 (6th Cir. 2007)........................................................ 9, 11, 16, 19
23
    *County of Orange* v. *McGraw Hill Cos.,*
24      245 B.R. 151 (C.D. Cal. 1999)............................................................................ 18

25  *Credit Alliance Corp.* v. *Arthur Andersen & Co.,*
        483 N.E.2d 110 (N.Y. 1985)................................................................................ 10
26
    *In re Enron Corp. Securities, Derivative & "ERISA" Litigation,*
27      511 F. Supp. 2d 742 (S.D. Tex. 2005) ............................................................ 6, 18

28

- ii -

*First Equity Corp. of Florida* v. *Standard & Poor's Corp.,*
   690 F. Supp. 256 (S.D.N.Y 1988), *aff'd on other grounds,* 869 F.2d 175 (2d Cir. 1989) ....... 19

*Gadda* v. *State Bar of California,* 511 F.3d 933 (9th Cir. 2007) ............................................ 21n

*Gertz* v. *Robert Welch, Inc.,*
   418 U.S. 323 (1974) ................................................................................................... 16-17

*Ginsburg* v. *Agora, Inc.,*
   915 F. Supp. 733 (D. Md. 1995) ..................................................................................... 6

*In re Glenfed, Inc. Securities Litigation,*
   42 F.3d 1541 (9th Cir. 1994), *superseded by statute on other grounds* ................................ 3, 8

*Glen Holly Entertainment, Inc.* v. *Tektronix, Inc.,*
   100 F. Supp. 2d 1086 (C.D. Cal.1999) ............................................................................ 3

*Global Minerals & Metals Corp.* v. *Holme,*
   824 N.Y.S.2d 210 (1st Dep't 2006) ............................................................................... 20

*Gutter* v. *Dow Jones, Inc.,*
   490 N.E.2d 898 (Ohio 1986)......................................................................................... 5-6

*Harte-Hanks Communications, Inc.* v. *Connaughton,*
   491 U.S. 657 (1989)................................................................................................... 18-19

*Hustler Magazine* v. *Falwell,*
   485 U.S. 46 (1988) ...................................................................................................... 17

*Hydro Investors, Inc.* v. *Trafalgar Power Inc.,*
   227 F.3d 8 (2d Cir. 2000) ............................................................................................... 8

*Jefferson County School District* v. *Moody's Investor's Services, Inc.,*
   175 F.3d 848 (10th Cir. 1999)..................................................................................... 16-17

*King* v. *Crossland Savings Bank,*
   111 F.3d 251 (2d Cir. 1997)............................................................................................ 8

*In re Lehman Brothers Securities and ERISA Litigation,*
   — F. Supp. 2d —, 2010 WL 545992 (S.D.N.Y. Feb. 17, 2010) ........................ 9, 11, 13-15, 17

*Levine* v. *Diamanthuset, Inc.,*
   950 F.2d 1478 (9th Cir. 1991)....................................................................................... 20

*Long* v. *Arcell,*
   618 F.2d 1145 (5th Cir. 1980)....................................................................................... 18

*Louis Capital Markets, L.P.* v. *Refco Group Ltd.,*
   801 N.Y.S.2d 490 (Sup. Ct. N.Y. Co. 2005)................................................................... 20

*Meridian Project Systems, Inc.* v. *Hardin Construction Co.,*
   404 F. Supp. 2d 1214 (E.D. Cal. 2005)............................................................................ 8

*In re Merrill Lynch & Co.,*
   273 F. Supp. 2d 351 (S.D.N.Y. 2003),

- iii -

*aff'd sub nom. on other grounds Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005) ................................................................................................................................. 11-12

*Milkovich* v. *Lorain Journal Co.*,
    497 U.S. 1 (1990) ......................................................................................................... 16

*New Jersey Carpenters Health Fund* v. *DLJ Mortgage Capital, Inc.*,
    2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010) ................................................. 9, 11, 17

*New Jersey Carpenters Vacation Fund* v. *Royal Bank of Scotland Group, PLC*,
    2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) ........................................... 9, 11, 15, 17

*New York Times Co.* v. *Sullivan*,
    376 U.S. 254 (1964) ..................................................................................................... 17

*Parrott* v. *Coopers & Lybrand, L.L.P.*,
    741 N.E.2d 506 (N.Y. 2000) ......................................................................................... 5

*Pasadena Unified School District* v. *Pasadena Federation of Teachers*,
    140 Cal. Rptr. 41 (2d Dist. 1977) ............................................................................... 20

*Plumbers' Union Local No. 12 Pension Fund* v. *Nomura Asset Acceptance Corp.*,
    658 F. Supp. 2d 299 (D. Mass. 2009) ......................................................................... 14

*Quinn* v. *McGraw-Hill Cos.*,
    168 F.3d 331 (7th Cir. 1999) ....................................................................................... 10

*Rick-Mik Enterprises, Inc.* v. *Equilon Enterprises, LLC*,
    532 F.3d 963 (9th Cir. 2008) ......................................................................................... 3

*Robinson Helicopter Co.* v. *Dana Corp.*,
    34 Cal. 4th 979 (2004) ................................................................................................. 11

*In re Salomon Analyst AT&T Litigation*,
    350 F. Supp. 2d 455 (S.D.N.Y. 2004) ........................................................................... 9

*Shamley* v. *ITT Corp.*,
    869 F.2d 167 (2d Cir. 1989) ......................................................................................... 19

*Sisseton-Wahpeton Sioux Tribe* v. *United States,* 90 F.3d 351 (9th Cir. 1996) ......................... 21n

*St. Amant* v. *Thompson*,
    390 U.S. 727 (1968) .............................................................................................. 17-18, 19

*Stancik* v. *CNBC*,
    420 F. Supp. 2d 800 (N.D. Ohio 2006) ......................................................................... 6

*Starlite Development (China) Ltd.* v. *Textron Financial Corp.*,
    2008 WL 2705395 (E.D. Cal. July 8, 2008) ........................................................... 20-21

*Sykes* v. *RFD Third Avenue 1 Associates*,
    884 N.Y.S.2d 745 (1st Dep't 2009) ............................................................................... 5

*Time, Inc.* v. *Hill*,
    385 U.S. 374 (1967) ..................................................................................................... 17

- iv -

*Tsereteli* v. *Residential Asset Securitization Trust 2006-A8,*
— F. Supp. 2d —, 2010 WL 816623 (S.D.N.Y. Mar. 11, 2010) ............................ 9, 11, 14, 17

*Ultramares Corp.* v. *Touche,*
174 N.E. 441 (N.Y. 1931) ................................................................................... 4-5

*Vanguard Municipal Bond Fund, Inc.* v. *Cantor, Fitzgerald L.P.,*
40 F. Supp. 2d 183 (S.D.N.Y. 1999) .................................................................... 5

*Wilhelm* v. *Pray, Price, Williams & Russell,*
186 Cal. App. 3d 1324 (2d Dist. 1986) ............................................................... 15

*Wynn* v. *AC Rochester,*
273 F.3d 153 (2d Cir. 2001) .............................................................................. 11n

## RULES

Fed. R. Civ. P. 8 ................................................................................................... 1

Fed. R. Civ. P. 9(b) ............................................................................... 1, 3, 8, 11, 15

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 3

## ADDITIONAL AUTHORITY

Restatement (Second) of Torts, Draft No. 11 (Apr. 15, 1965) ....................................... 7

Restatement (Second) of Torts (1977) ...................................................................... 5-7

1    Defendants The McGraw-Hill Companies, Inc. ("McGraw-Hill"), Moody's Investors

2    Service, Inc. ("Moody's"), and Fitch, Inc. ("Fitch") (collectively "Defendants"), respectfully

3    submit this joint memorandum in support of their motion seeking dismissal of the claims asserted

4    against them by Plaintiffs Ronald and Sally Grassi ("Plaintiffs") in their Amended Complaint

5    ("AC").

6                                      **INTRODUCTION**

7        Plaintiffs' Amended Complaint reasserts two previously dismissed claims for negligent

8    misrepresentation and fraud (styled as "intentional misrepresentation"), and adds a new third

9    claim for "aiding and abetting."    The Court previously found it "unlikely" that Plaintiffs could

10   craft a pleading that complied with Rules 8 and 9(b); as demonstrated below, the Court's

11   skepticism was warranted, and all three claims should be dismissed with prejudice.

12       First, as demonstrated in <u>Section I</u>, Plaintiffs' claim for negligent misrepresentation must

13   be dismissed because Plaintiffs again fail to make any allegation that they stood in privity or its

14   functional equivalent with Defendants, or that they were otherwise members of a "limited group

15   of intended beneficiaries" of Defendants' credit ratings.  Thus, under both New York and

16   California law, Plaintiffs fail to allege that they were owed any duty of care — the fundamental

17   prerequisite to any negligent misrepresentation claim — by the Defendants.

18       Even with a second "bite at the apple," the most Plaintiffs can allege on the subject of

19   duty is that Defendants' credit ratings "were communicated . . . to the public, of which plaintiffs

20   were members."  (AC at 13.)  This allegation — appearing under the heading "Privity" in the

21   Amended Complaint — plainly does not suffice as a matter of law.  If it did, the near-privity and

22   limited group requirements under New York and California law would simply have no meaning

23   at all.  Nor can Plaintiffs demonstrate the existence of a duty of care by alleging, as they do, that

24   Defendants disseminated their credit ratings to a "class" of investors, including themselves, who

25   were "looking for safe investment grade corporate bonds." *Id.* at 15.  This purported "class"

26   constitutes millions of investors whose interests could only be said to be similar on the most

27   general level; this allegation does not sustain Plaintiffs' burden of alleging that the ratings were

28   targeted to, and were specifically intended to benefit, one specific category or another of

1   recipient.  For these reasons alone, Plaintiffs have failed, again, to allege a duty of care owed by

2   any Defendant and thus fail to state a claim for negligent misrepresentation.

3       As demonstrated in <u>Sections II and III</u>, respectively, Plaintiffs have failed to allege with

4   particularity, as they must, essential elements of their claims for negligent misrepresentation and

5   fraud.  The original Complaint was a form pleading; although the Amended Complaint now takes

6   the form of a narrative complaint, it is devoid of substantive allegations about the ratings of the

7   Lehman bonds that Plaintiffs purchased.  Notably, the Amended Complaint includes no

8   allegations that Defendants made any false statements in connection with the specific bonds at

9   issue in this case — a fundamental requirement to state a claim for both negligent

10  misrepresentation and fraud.   As court after court has confirmed over the past several months, the

11  Rating Agencies' ratings are opinions that cannot be actionable as misrepresentations, under any

12  theory, absent *factual* allegations sufficient to support a claim that the *specific rating opinions at*

13  *issue* were not genuinely held by those at the agency who prepared them.  As the Court predicted

14  when dismissing the original Complaint, Plaintiffs can offer no such allegations.

15      Similarly, the Amended Complaint contains no allegation, as required to state a claim for

16  fraud, that any of Defendants' relevant rating analysts acted with scienter, *i.e.*, that they did not

17  genuinely *believe* in the credit ratings they placed on the bonds allegedly purchased by Plaintiffs.

18      Instead, the Amended Complaint (which parrots Plaintiffs' briefing on the motion to

19  dismiss the original Complaint) is filled with broad descriptions of the rise and collapse of the

20  market for residential mortgage-backed securities ("RMBS"); quotations from an SEC report and

21  a newspaper article critical of the credit rating agencies; citations to e-mails and Congressional

22  testimony that purport to demonstrate that defendants succumbed to conflicts of interest and

23  ignored weaknesses in their credit rating models; generalized allegations that Defendants "sold

24  out to the issuers [by rating] toxic sub-prime mortgage-backed bonds," and so on.  *See* AC at 5-7,

25  12.  As explained in Defendants' earlier submissions in this case — and in a series of recent

26  decisions (discussed below) that have been issued by federal courts dismissing claims against the

27  Rating Agencies —  not only do these broad, generalized allegations on their face have nothing to

28  do with the securities actually alleged to be at issue here, but they also largely do not differentiate

- 2 -

1  among defendants, and in all events certainly do not rise anywhere near the level of what is

2  required to state a claim for negligent misrepresentation or fraud.

3       As set forth in <u>Section IV</u>, Plaintiffs' negligent misrepresentation claim is

4  separately barred by fundamental principles of constitutional law, both because

5  Defendants' published credit ratings are non-actionable expressions of opinion, and

6  because Plaintiffs fail to allege that Defendants acted with actual malice.  And finally, as

7  explained in <u>Section V</u>, Plaintiffs' new claim, for aiding and abetting, fares no better

8  because the Amended Complaint does not allege what, if any, actionable conduct

9  Defendants are alleged to have aided or abetted and, in any event, Plaintiffs fail to allege

10  any "knowing participation" by Defendants in any such conduct.

11       For these reasons, Plaintiffs' Amended Complaint must be dismissed with

12  prejudice.

13  **STANDARD OF REVIEW**

14       The Court summarized the applicable pleading standards in its March 26, 2010 Order

15  dismissing Plaintiffs' original Complaint ("March 26 Order").  Put simply, while a Plaintiff need

16  not allege "'[d]etailed factual allegations'" to survive a motion to dismiss under Rule 12(b)(6), it

17  is settled that "[t]hreadbare recitals of the elements of a cause of action, supported by mere

18  conclusory statements," do not suffice.  *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation

19  omitted).  *See also Rick-Mik Enterprises, Inc*. v. *Equilon Enterprises, LLC*, 532 F.3d 963, 975

20  (9th Cir. 2008) ("'[A] formulaic recitation of the elements of a cause of action will not do.'")

21  (quoting *Bell Atlantic Corp*. v. *Twombly*, 550 U.S. 544, 555 (2007)).  Here, where the Amended

22  Complaint alleges negligent misrepresentation and fraud, the standard is even higher, requiring

23  *particularized* allegations.  *In re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-48 (9th

24  Cir. 1994) (en banc), *superseded by statute on other grounds* (applying Rule 9(b) to fraud claim);

25  *Glen Holly Entertainment, Inc. v. Tektronix, Inc.,* 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999)

26  ("Claims for fraud *and negligent misrepresentation* must meet the heightened pleading

27  requirements of Rule 9(b).") (emphasis added).

28

- 3 -

1   The Court's March 26 Order was based expressly on Plaintiffs' failure to satisfy these

2   pleading standards.  The Court held that Plaintiffs "pleading [is] not specific enough to give each

3   defendant notice of its particular misconduct, it does not allege facts that establish each element

4   of the two claims, and it falls far short of stating a plausible, cognizable claim against any

5   defendant."  As explained below, Plaintiffs' current pleading fails to cure these fatal errors.

6                                              **ARGUMENT**

7   **I.    PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM MUST BE**
        **DISMISSED BECAUSE, AS A MATTER OF LAW, DEFENDANTS DID**
8       **NOT OWE THEM A DUTY OF CARE**

9        Although the Court did not need to reach the duty of care question in its March 26 Order,

10  given the skeletal form complaint that Plaintiffs originally filed, the Court had already expressed

11  considerable skepticism about Plaintiffs' ability to make the necessary allegations, as reflected

12  below in the following excerpt from the transcript of the parties' July 31, 2009 oral argument.

13          "[U]nless I'm missing something, with all the papers I've received, I think
            [duty of care is] what it comes down to. . . . Mr. and Mrs. Grassi . . .
14          you've told me a lot of things about much that has been written regarding
            the defendant[s] and what has or hasn't happened in connection with the
15          economy and the mortgage markets, et cetera, . . . [b]ut the only thing that
            really matters for purposes of . . . assessing these motions to dismiss and
16          issuing findings and recommendations is whether you have any authority,
            legal authority, not what's right, not what seems fair . . . for the
17          proposition that under this situation the defendants owed you some duty
            that allows you to bring this action against them."  Docket No. 64, at 2-3.
18
    The Court's skepticism was warranted because the standard for establishing a duty of care —
19
    whether under New York or California law — requires far more than Plaintiffs have alleged in
20
    the Amended Complaint or, indeed, could possibly allege.[1]
21
         Under New York law, liability for negligent misrepresentation can exist only where a
22
    plaintiff establishes a relationship of privity or a "bond . . . so close as to approach that of privity"
23
    between the plaintiff and the defendant.  *See Ultramares Corp.* v. *Touche*, 174 N.E. 441, 446
24
    (N.Y. 1931) (J. Cardozo).  As explained in Defendants' memoranda supporting their original
25

26  _____
    [1]     In its opening brief (which was adopted by the other defendants), defendant McGraw-Hill
27  demonstrated why New York law should govern Plaintiffs' negligent misrepresentation claim.  *See* Docket
    No. 48, at 4, n.4.  All Defendants hereby incorporate those arguments again.  In any event, as explained
28  below, Plaintiffs have plainly failed to establish a duty of care under either state's standard.

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: CIV-S-09-00543-JAM-DAD

1   motion to dismiss, New York courts have adhered faithfully to this almost 80-year-old rule,

2   repeatedly dismissing claims where the plaintiff and defendant were not in privity or its

3   functional equivalent.  *See, e.g., Vanguard Municipal Bond Fund, Inc.* v. *Cantor, Fitzgerald L.P.*,

4   40 F. Supp. 2d 183, 189-95 (S.D.N.Y. 1999) (rejecting claim for negligent misrepresentation

5   brought against a group of brokers arising out of alleged errors in the pricing of a bond index on

6   grounds that the plaintiff was "not specifically known" to the defendants but was merely "a

7   member of the general investing public" that had "absolutely no contact with the [defendants]")

8   (citation and internal quotation marks omitted).  *See also Sykes* v. *RFD Third Avenue 1 Assocs.*,

9   884 N.Y.S.2d 745, 747 (1st Dep't 2009) (providing that New York law follows a "narrow

10  approach" to negligent misrepresentation, requiring allegation of "a 'special relationship,' *i.e.*, 'a

11  relationship so close as to approach that of privity'") (quoting *Parrott* v. *Coopers & Lybrand,

12  L.L.P.*, 741 N.E.2d 506, 509 (N.Y. 2000)).  This rule is based, at its core, on well-settled public

13  policy considerations.  *See Ultramares*, 174 N.E. at 444 (observing that a lower standard would

14  expose the speaker to the unacceptable prospect of "liability in an indeterminate amount for an

15  indeterminate time to an indeterminate class").

16          California law, too, ensures that those who provide information to the general public are

17  not exposed to unlimited or open-ended liability.  In California, the duty of care analysis is

18  governed by Section 552 of the Restatement (Second) of Torts (1977), which restricts recovery to

19  those plaintiffs who can prove they were part of a "limited group" for whose benefit the

20  information was disseminated.  *See Bily* v. *Arthur Young & Co.*, 3 Cal. 4th 370 (1992).  Similar

21  to the New York rule, the "limited group" requirement under Section 552 is designed to

22  "promote[] the important social policy of encouraging the flow of commercial information upon

23  which the operation of the economy rests."  Restatement § 552 cmt a.

24          An instructive and frequently-cited case applying the principles of Section 552 is *Gutter* v.

25  *Dow Jones, Inc.*, 490 N.E.2d 898 (Ohio 1986), in which the court dismissed a negligent

26  misrepresentation claim brought against a newspaper by an investor.  The plaintiff claimed to

27  have relied to his detriment on a newspaper report that certain corporate bonds were "trading with

28

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: CIV-S-09-00543-JAM-DAD

1    interest."  He alleged that the defendant publisher "knew, or should have known" the report was

2    inaccurate and that it published the report "with the intent that investors rely" on it in making

3    financial decisions.  *Id*. at 899.  Dismissing the claim, the court concluded that "as a newspaper

4    reader, appellee does not fall within a special limited class (or group) of foreseeable persons as set

5    forth in Section (2)(a) [of Section 552]."  *Id.* at 900.  *See also Ginsburg* v. *Agora, Inc.*, 915 F.

6    Supp. 733, 739 (D. Md. 1995) (dismissing negligent misrepresentation claim on grounds that

7    "[t]he publication is offered to the general public and the information provided in the publication

8    is of a general nature, that is, it is not specifically tailored to [the] financial situation of any

9    individual subscriber"); *Stancik* v. *CNBC*, 420 F. Supp. 2d 800, 807-08 (N.D. Ohio 2006)

10   (granting motion to dismiss action brought by viewer against financial cable television network,

11   noting that "[a] contrary result would in effect extend liability to all the world and not a limited

12   class").

13        These same principles and policy considerations were applied in the multidistrict Enron

14   litigation in connection with negligent misrepresentation claims brought, under Connecticut law,

15   against each of the same Defendants in this case.  In that case, *In re Enron Corp. Securities,*

16   *Derivative & "ERISA" Litigation*, 511 F. Supp. 2d 742, 826-27 (S.D. Tex. 2005), the court held

17   that the rating agency defendants owed no duty of care to the plaintiff because there were no

18   allegations of relevant contact between them.  Thus, the court concluded, the plaintiff was no

19   different than any of the countless investors, counterparties and others who might have consulted

20   credit ratings of Enron.  The court further stated:

21            To vigorously participate in the credit rating industry, which provides
             useful information for investors, Rating Agencies must be allowed to
22           maintain independence and objectivity and not be swayed by risk of
             unlimited liability for errors to either issuers or investors; instead the
23           market should be the appropriate means for ensuring the reliability of
             credit opinions and of rating agencies. . . . [A]llowing anyone to sue
24           credit rating agencies who had read the credit rating reports and
             claimed to have relied upon them and lost money in any endeavor that
25           person undertook would be far more deleterious than beneficial to
             society as a whole. *Id.* at 815, 827 (citations omitted).
26

27

28

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: CIV-S-09-00543-JAM-DAD

1    Here, similarly, Plaintiffs have failed to allege facts sufficient to establish a duty of care

2  under either the New York or California standards.  Plainly, the allegation that Defendants'

3  ratings "were communicated . . . to the public, of which plaintiffs were members"  (AC at 13),

4  does not come close to meeting the required threshold.  As noted, if the "limited group" could be

5  defined so broadly, the requirement would be meaningless since the theoretical bounds of "the

6  public" include, in fact, the whole world.  If Plaintiffs' theory were correct, for example,

7  Defendants would face potentially unlimited and indeterminate exposure to anyone in any way

8  involved in the financial markets who simply claims to have relied to their detriment on its credit

9  ratings — including investors, brokers, contractual counterparties and anyone else who ever

10  purchased, considered purchasing but decided not to purchase, or advised others on purchasing or

11  not purchasing rated securities — including, but certainly not limited to, the billions of dollars of

12  debt issued by Lehman Brothers.  The group would be boundless in size and it would eviscerate

13  the clear and controlling requirements both New York and California law.

14    Nor can Plaintiffs succeed by alleging that they belonged to a "class" of investors

15  "looking for safe investment grade corporate bonds."  (AC at 15.)  There would be nothing at all

16  "limited" about such a class of investors — it would have no reasonable or principled boundaries

17  and would include many millions of people around the world.  Moreover, there are no facts

18  alleged in the Amended Complaint to demonstrate that any of the Defendants specifically

19  intended to supply their ratings on the Lehman Brothers bonds to this alleged category of

20  conservative investors, as opposed to all other investors who can and do receive their ratings.  *See*

21  *e.g.*, *Bily* v. *Arthur Young & Co.*, 3 Cal. 4th at 394-95 (observing that Section 552 was intended to

22  "'eliminate liability to the very large class of persons whom almost any negligently given

23  information may foreseeably reach and influence, and limit the liability, not to a particular

24  plaintiff defined in advance, but to the comparatively small group whom the defendant *expects*

25  *and intends* to influence'") (quoting Restatement (Second) of Torts, Draft No. 11 § 552 at 56

26  (Apr. 15, 1965)).

27

28

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: CIV-S-09-00543-JAM-DAD

1    Accordingly, Plaintiffs cannot establish a duty of care under either New York or

2    California law and, for this reason alone, their negligent misrepresentation claim should be

3    dismissed.

4    **II.    PLAINTIFFS HAVE FAILED TO PLEAD ADDITIONAL**

5    **ELEMENTS NECESSARY TO STATE A CLAIM FOR**
     **NEGLIGENT MISREPRESENTATION**

6    A claim for negligent misrepresentation also requires a plaintiff to allege (in addition to a

7    duty of care) that (i) "defendant made a false representation that he or she should have known was

8    incorrect;" (ii) "the information supplied in the representation was known by the defendant to be

9    desired by the plaintiff for a serious purpose;" (iii) "plaintiff intended to rely and act upon it; and"

10   (iv) "plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc.* v. *Trafalgar*

11   *Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). [2]  *See also King* v. *Crossland Savings Bank,* 111 F.3d

12   251, 257-58 (2d Cir. 1997).  As noted, the particularity requirements of Rule 9(b) apply with full

13   force to claims for negligent misrepresentation.  *See Meridian Project Systems, Inc.* v. *Hardin*

14   *Construction Co.*, 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005) ("[I]t is well-settled in the Ninth

15   Circuit that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s

16   particularity requirement.").  *See also Aetna Casualty and Surety* v. *Aniero Concrete Co.*, 404

17   F.3d 566, 583-85 (2d Cir. 2005) (applying Rule 9(b) to negligent misrepresentation claim brought

18   under New York law).

19

20   Most fundamentally, to comply with Rule 9(b), a complaint must provide the

21   circumstances underlying the alleged misrepresentation, including not only "the time, place and

22   content" of each statement but also allegations to explain *how* or *why* those ratings constitute false

23   statements.  *Glenfed*, 42 F.3d at 1547-48 (requiring allegations of the "*circumstances* indicating

24   falseness") (emphasis added).  Thus, it is not enough for Plaintiffs merely to allege, as they do,

25   that Defendants "should have assigned the lowest rating possible to reflect the[] true low value"

26

27   _____
     [2]    These remaining elements are essentially the same under the laws of New York and California. *See*

28   *Bily*, 3 Cal. 4th at 407.

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: CIV-S-09-00543-JAM-DAD

1  of the Lehman bonds they allegedly purchased.  (AC at 7.)  As explained more fully in Section

2  III, *infra*, Plaintiffs fail to meet this requirement because they do not make *any* particularized

3  allegations regarding the ratings on the specific securities that allegedly caused their losses.[3]  In

4  addition, there can be no serious dispute that Defendants' credit ratings — which focus on the

5  likelihood that a particular issuer or security may default at some point in time — are by

6  definition opinions, since there can be no "facts" about what will happen in the future.  *See, e.g.*,

7  *Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) ("A

8  Moody's credit rating is a predictive opinion, dependent on a subjective and discretionary

9  weighing of complex factors."); *New Jersey Carpenters Health Fund* v. *DLJ Mortgage Capital*

10  *Inc.*, 2010 WL 1473288, at *7-*8 (S.D.N.Y. Mar. 29, 2010) (holding that credit ratings are

11  "statements of opinion, not facts"); *New Jersey Carpenters Vacation Fund* v. *Royal Bank of*

12  *Scotland Group, PLC*, 2010 WL 1172694, at *13-*14 (S.D.N.Y. Mar. 26, 2010) ("[C]redit ratings

13  and the relative adequacy of protective credit enhancements are statements of opinion, as they are

14  predictions of future value and future protection of that value.'") (citation omitted); *Tsereteli* v.

15  *Residential Asset Securitization Trust 2006-A8*, -- F. Supp. 2d --, 2010 WL 816623, at *5

16  (S.D.N.Y. Mar. 11, 2010) ("[W]hether the 'credit quality of the mortgage pool' was 'properly

17  considered' or 'adequate' to support a particular rating was not a matter of objective fact.  It was

18  instead a statement of opinion by each agency[.]"); *In re Lehman Bros. Securities and ERISA*

19  *Litigation*, -- F. Supp. 2d --, 2010 WL 545992, at *6 (S.D.N.Y. Feb. 17, 2010) ("Whether the

20  credit enhancements were adequate to support the Certificates' ratings . . . was not a statement of

21  fact.").  Thus, "[t]o survive a motion to dismiss on a false statement of opinion claim," it is not

22  sufficient merely to allege that a proffered opinion was "unreasonable, irrational, excessively

23  optimistic, not borne out by subsequent events, or any other characterization that relies on

24  hindsight or falls short of an identifiable gap between the opinion publicly expressed and the

25  opinion truly held."  *See In re Salomon Analyst AT&T Litigation*, 350 F. Supp. 2d 455, 466

26  (S.D.N.Y. 2004).

27

28
_____

[3]      The failure to allege any misstatement also bars Plaintiffs' fraud claim.

- 9 -

1    Plaintiffs also do not (and cannot) make any allegation in the Amended Complaint to

2    demonstrate, as required by the second element above, that Defendants knew that these particular

3    Plaintiffs would use their ratings on Lehman bonds for any particular purpose.  This, too, compels

4    dismissal as a matter of law.  *See Bily*, 3 Cal. 4th at 414-15.  *See also Credit Alliance Corp.* v.

5    *Arthur Andersen & Co.*, 483 N.E.2d 110, 119 (N.Y. 1985).  Nor can Plaintiffs as a legal matter

6    allege that their purported reliance on Defendant's credit ratings was reasonable, as required to

7    satisfy the third element of a negligent misrepresentation claim.  That is because Defendants'

8    respective credit rating reports on the securities at issue here contained express cautionary

9    language about the nature of their rating opinions and their proper use.

10           The credit ratings and observations contained herein are solely
             statements of opinion and not statements of fact or
11           recommendations to purchase, hold, or sell any securities or make
             any other investment decisions.  Accordingly, any user of the
12           information contained herein should not rely on any credit rating or
             other opinion contained herein in making any investment decision.
13

14    *See* May 3, 2010 Declaration of David Biderman in Support of Defendants' Motion to Dismiss the

15    Amended Complaint, at Ex. 1; *see also* June 15, 2009 Declaration of Keith E. Eggleton in

16    Support of Moody's Motion to Dismiss, at Ex. B (disclaimers that ratings are statements of

17    opinion, not fact, and are not recommendations to purchase) (*See* Dkt. No. 46).  As demonstrated

18    by Defendants in their earlier submissions, this sort of clear and unambiguous disclaimer provides

19    an independent ground for dismissal of Plaintiffs' claims as a matter of law.  *See Quinn* v.

20    *McGraw-Hill Cos.*, 168 F.3d 331, 336 (7th Cir. 1999) (affirming dismissal of a misrepresentation

21    claim against S&P on grounds that investor "was responsible for doing his own homework about

22    the risks he was assuming" and was on notice that an S&P rating was "'not a recommendation to

23    buy, sell, or hold" a security).

24           Because Plaintiffs have failed to plead these necessary elements of negligent

25    misrepresentation with anything approaching the requisite particularity, their claim must be

26    dismissed.

27

28

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: CIV-S-09-00543-JAM-DAD

### III.  PLAINTIFFS HAVE FAILED TO ALLEGE ELEMENTS NECESSARY TO STATE A CLAIM FOR FRAUD

The Amended Complaint also fails to allege facts to establish critical elements necessary to state a claim for fraud under California law, most notably the elements of falsity and scienter. *See Robinson Helicopter Co.* v. *Dana Corp.*, 34 Cal. 4th 979, 990 (2004).[4]

As demonstrated above, Defendants' credit ratings have widely been held to be statements of opinion. *See supra* at 9. Thus, to allege the elements of falsity and scienter in connection with statements of opinion, Plaintiffs must plead facts to show that Defendants held a "disbelief in the truth of the statement," *i.e.*, that Defendants "*did not believe the representation to be true.*" *See Anderson* v. *Deloitte & Touche LLP*, 56 Cal. App. 4th 1468, 1476 (1st Dist. 1997) (emphasis added). This very point has been recognized in the various cases, cited above, dismissing claims against certain of these same defendants regarding their respective credit rating opinions. *See Compuware*, 499 F.3d at 529 (6th Cir. 2007); *New Jersey Carpenters Health Fund, supra*, at *7-*8; *New Jersey Carpenters Vacation Fund, supra*, at *13-*14; *Tsereteli, supra*, at *5; *In re Lehman Bros. Securities and ERISA Litigation, supra*, at *6.

Another case, not involving credit ratings, is particularly instructive on this issue. In *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 368-75 (S.D.N.Y. 2003), *aff'd sub. nom. on other grounds Lentell* v. *Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), which arose under the federal securities laws but was decided based on plaintiffs' failure to satisfy Rule 9(b), the court dismissed claims brought by investors who claimed to have relied to their detriment on certain equity research reports issued by Merrill Lynch. Plaintiffs' complaint, similar to Plaintiffs' Amended Complaint here, contained numerous assertions that Merrill Lynch's ratings were compromised by conflicts of interest, that the ratings were issued fraudulently and were intended

---

[4]    Unlike the law regarding negligent misrepresentation, the laws of New York and California do not differ substantively with respect to the elements of common law fraud. *See Wynn* v. *AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) ("Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff.")

simply to generate investment banking business. *See id.* at 369-70. The court found these

allegations to be insufficient and dismissed the claims because plaintiff failed to allege that the

equity ratings were inconsistent with opinions truly held by defendant's analyst:

> Nowhere in [the complaints] is it specifically alleged precisely *which* analysts
> had *which* conflicts of interest involving *which* investment banking deals
> leading to *which* . . . research reports being misleading, to what degree, and
> when. [Emphasis in original]. Instead the complaints allege that "analysts" (in
> general) were "often" (no specifics) "initiating, continuing and/or
> manipulating" (note the vague catchall conjunction "and/or") "research
> coverage" (in general), producing generally "misleading ratings" (no specifics
> or reasons given) that were generally "tarnished" (plaintiffs should allege
> whether "tarnished" encompasses "materially misleading," and if so, how) —
> all in order to attract and keep various unnamed and unspecified investment
> banking "clients."

* * *

> Plaintiffs . . . must allege particular facts, *for each and every rating challenged*
> [and] that Merrill Lynch and [its analyst] did not hold the opinion or had no
> reasonable basis for believing the opinion. . . . Allegations regarding the
> motivation to attract investment banking business are not specific
> contemporaneous data or information inconsistent with the opinions.

*Id.* at 371-73. In another passage directly relevant to this case, the *Merrill Lynch* court further

observed that it is "not enough to quote press speculation about defendants' motives and press

reports of other occasions [of alleged wrongdoing] . . . Such allegations simply do not provide . .

. 'specific, well-pleaded facts' . . . . " *Id.* at 374 (internal citations omitted).

In this action, having now had two chances to plead facts in support of their fraud claims,

Plaintiffs have made no particularized allegations of provable facts sufficient even to suggest that

any of Defendants' rating analysts disbelieved the rating opinions on the Lehman bonds that

Plaintiff purchased. At most, Plaintiffs have sought to second-guess those credit ratings — *see*

Amended Complaint at 7 ("The Rating Agencies should have assigned the lowest rating

possible") — and have made vague, extraneous allegations that Defendants failed as

"Gatekeepers" charged with protecting the public; "abandoned their traditional role of alleged

honesty, thoroughness, professionalism and objectivity; "[sold] themselves and their credibility

and their ratings" in order to legitimize "toxic loans," among other things. (AC 7-8.) Of course,

none of this constitutes a particularized allegation that Defendants disbelieved their published

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: CIV-S-09-00543-JAM-DAD

ratings on the bonds that Plaintiffs purchased.  In fact, these allegations — all made in the context of "toxic mortgage-backed securities" or other structured finance products — do not even relate to the *type* of securities that allegedly gave rise to Plaintiffs' losses.  *See* AC at 8 (acknowledging that the investments giving rise to this claim were in "two *corporate bonds*" issued by Lehman Brothers) (emphasis added).

In addition to these vague assertions, Plaintiffs' allegations also incorporate certain Congressional testimony and a few internal company e-mails — all related, again, to mortgage-backed and/or other structured finance securities.  Plaintiffs suggest that these materials stand for the proposition that, among other things, Defendants utilized flawed models, succumbed to conflicts of interest and "ignored the evidence of the risk lurking in Lehman's financial statements."  (AC 12.)  Again, however, not one of these excerpts, e-mails or other materials actually have anything to do with the particular bonds at issue in this case — or even the *type* of bonds that Plaintiffs allegedly purchased.  Thus, putting aside Plaintiffs' mischaracterizations of what these materials actually mean, they are, in any event, entirely irrelevant to the specific claims in this case and clearly do not constitute particularized allegations that any of the Defendants (much less all of them) knowingly issued false ratings on the bonds that Plaintiffs' claim to have purchased.

This is not the first time that a plaintiff has sought to use these same (or similar) publicly available materials to support a cause of action related to a claim arising out of a specific credit rating.  The technique has already been tried repeatedly and it has repeatedly failed.  For example, in a series of recent decisions (some of which are cited above in Section II), the U.S. District Court for the Southern District of New York rejected the same type of arguments Plaintiffs appear to advance here, but in the context of claims *actually relating to securities backed by mortgages*:

> These allegations are insufficient to support an inference that the ratings agencies did not actually hold the opinion about the sufficiency of the credit enhancements to justify each rating at the time each rating was issued.  At best, they support an inference that some employees believed that the ratings agencies could have used methods that better would have informed their opinions.  Consequently, the claims based on these statements fail.

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: CIV-S-09-00543-JAM-DAD

1   *Lehman Bros.*, -- F. Supp. 2d --, 2010 WL 545992, at *6.  *See also Plumbers' Union Local No. 12*

2   *Pension Fund* v. *Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 309-10 (D. Mass. 2009)

3   ("None of the purported comments made by S&P and Moody's employees in the wake of the

4   collapse of the sub-prime mortgage market (in 2007) 'support the inference' that the ratings were

5   compromised as of the dates (in 2005 and 2006) when the registration statements and prospectus

6   supplements became effective.") (citations omitted).  Similarly, in *Tsereteli* — again a case that,

7   unlike this one, actually concerned mortgage-backed securities — the court found that:   "With

8   respect to the Ratings Agencies, the amended complaint alleges only that they used out-of-date

9   models, did not verify the loan information provided to them, and have since downgraded the

10  Certificates' ratings.  These allegations are insufficient to support an inference that the Ratings

11  Agencies did not actually believe that the ratings they had assigned were supported by the factors

12  they said they had considered."  2010 WL 816623, at *5.  Here, Plaintiffs' allegations regarding

13  aspects of RMBS and/or structured finance rating processes and models are even further afield

14  than such allegations were in these other cases where they were rejected out of hand.

15        Further, Plaintiffs allege repeatedly that Defendants failed to disclose their purported

16  conflicts of interest prior to Plaintiffs' investments in the bonds at issue (*e.g.* AC at 4, 7, 14),

17  thereby suggesting that the Rating Agencies deceived Plaintiffs into believing their credit ratings

18  were independent and objective.  But, as the court held in *Lehman*, such potential conflicts were

19  public knowledge long before Plaintiffs' relevant investments in this case and do not give rise to a

20  cause of action:

21              [T]he risk that the ratings agencies operated under a conflict of
                interest because they were paid by the issuers had been known
22              publicly for years. . . . [A] January 2003 SEC report noted that
                "[c]oncerns have been expressed for a number of years about the
23              potential conflict of interest that arises from the fact that the largest
                credit rating agencies rely on issuer fees for the vast majority of
24              their revenues.

25  *Lehman*, 2010 WL 545992, at *4 (second alteration in original) (citations omitted).  The court

26  went on to find:

27              A reasonable investor would have known that the ratings agencies
                were paid by the issuers.  If the fee arrangement undermined an
28

- 14 -

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: CIV-S-09-00543-JAM-DAD

> investor's confidence in the ratings agencies' independence, a
> disclosure . . . would have added nothing important to the "total
> mix" of information available.

*Id.  See also New Jersey Carpenters Vacation Fund*, 2010 WL 1172694, at *14 (S&P and

Moody's had no duty to disclose the rating agencies' alleged conflicts of interest regarding

"structuring" and "ratings shopping" because they "were publicly known" for years).

Plaintiffs clearly do not (and evidently cannot) make *any* factual allegations relevant to the

specific securities at issue here, let alone allegations with the degree of particularity needed to

demonstrate that Defendants disbelieved their own rating opinions about those specific securities.

*See, e.g.*, *Wilhelm* v. *Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1331 (2d Dist.

1986) (dismissing fraud claim even though plaintiff alleged that defendant "knew [its]

representations were false," on ground that complaint "fail[ed] to plead with specificity a factual

basis for how [defendant] 'knew' the representations . . . were false").  Nor do Plaintiffs even

attempt to distinguish, as they must for purposes of Rule 9(b), between the three defendants in

this action and their respective states of mind.  *See, e.g.*, *Bledea* v. *Indymac Federal Bank*, 2010

WL 715255, at *8 (E.D. Cal. Feb. 25, 2010) (dismissing claim for intentional misrepresentation

where plaintiffs alleged only that:  "Defendants, and each of them, have made several

representations to Plaintiffs with regard to material facts;" "these representations . . . were false";

"Defendants knew that these material representations were false . . . or these material

representations were made with reckless disregard for the truth;" "Defendants intended that

Plaintiffs rely on these material representations" and "Plaintiffs reasonably relied," as a result of

which they "were harmed and suffered damages."); *see also* Docket No. 57, at 8-11 (reviewing

requirement that Plaintiffs allege "specific facts to demonstrate that S&P knowingly or recklessly

made a false statement, i.e., that it did not believe the rating opinions it issued in connection with

the Lehman bonds"); Dkt. No. 45, at 3.

## IV.    PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM
##          IS BARRED BY THE FIRST AMENDMENT

As discussed in Defendants' motions to dismiss the original complaint, Plaintiffs' negligent misrepresentation claim is also barred by fundamental principles of constitutional law, both because the Rating Agencies' publicly-disseminated credit ratings are non-actionable expressions of opinion, and because Plaintiffs fail to allege that the Rating Agencies acted with actual malice.

### A.    Credit Ratings Are Public Opinions That Do Not, as a Matter of Law, Contain the Requisite "False" Statement of Fact

It is well-established that credit ratings are "opinions" that inherently are not capable of being proven true or false.  As the United States Court of Appeals for the Sixth Circuit held in 2007 in the context of a rating issued by Moody's:

> A Moody's [credit] rating is a predictive opinion, dependent on a subjective and discretionary weighing of complex factors.  We find no basis upon which we could conclude that the credit rating itself communicates any provably false connotation. Even if we could draw any fact-based inferences from this rating, such inferences could not be proven false because of the inherently subjective nature of Moody's ratings calculation.

*Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520, 529 (6th Cir. 2007).  The *Compuware* court held that rating opinions could not provide the basis for a cognizable claim premised on their asserted falsity.  *Id.*  The Tenth Circuit reached the same result with respect to an allegedly "false" opinion about a bond issuer's creditworthiness, finding that the analysis that Moody's does to evaluate creditworthiness in inherently subjective — and therefore fully protected as opinion.  *Jefferson County School District* v. *Moody's Investor's Services,, Inc.*, 175 F.3d 848, 852, 855 (10th Cir. 1999) (holding that "'a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection'") (quoting *Milkovich* v. *Lorain Journal Co.*, 497 U.S. 1, 20 (1990)).

Plaintiffs' allegations that Defendants "should have known what others . . . knew" about the financial condition of Lehman Brothers (AC 7), cannot be squared with these cases.  *See*

- 16 -

1    *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974) ("[T]here is no such thing as a false

2    idea.  However pernicious an opinion may seem, we depend for its correction not on the

3    conscience of judges and juries but on the competition of other ideas.").  Based on the same

4    principles set out by the Sixth Circuit in *Compuware* and the Tenth Circuit in *Jefferson County*,

5    dismissal is also required here.  *See also New Jersey Carpenters Health Fund*, *supra* (recognizing

6    that credit ratings are opinions, not fact); *Tsereteli*, *supra* (same); *New Jersey Carpenters*

7    *Vacation Fund, supra* (same); *In re Lehman Bros. Securities, supra* (same).

8         **B.   Plaintiffs Have Not Alleged Actual Malice**

9              Another line of cases, also rooted in the First Amendment, provides an additional basis

10    for dismissal.  These rulings focus less on the opinion nature of ratings and more on the need to

11    avoid chilling the speech of those who disseminate financial information lest they refrain from

12    doing so to avoid the dangers of prolonged and potentially crippling litigation.  Often, these cases

13    arise in situations where facts as well as opinions are expressed and a plaintiff urges that the facts

14    were erroneous or mistaken.  In these cases, the protection frequently afforded is that of requiring

15    that the plaintiff plead and prove "actual malice."

16              The actual malice standard, first enunciated by the Supreme Court in *New York Times Co.*

17    v. *Sullivan*, 376 U.S. 254, 279-80 (1964), supplies the "breathing-space" the First Amendment

18    requires.  *Id.* at 272.  Under this standard, a publisher cannot incur liability for an allegedly false

19    statement unless the statement is made, "with knowledge that the statement was false or with

20    reckless disregard for whether or not it was true."  *Hustler Magazine* v. *Falwell*, 485 U.S. 46, 56

21    (1988).  The actual malice standard protects publishers from liability for "either innocent or

22    negligent misstatement," and guards against the "grave hazard of discouraging the press from

23    exercising [its] constitutional guarantees."  *Time, Inc.* v. *Hill*, 385 U.S. 374, 389 (1967).

24    Recklessness under the actual malice standard "is not measured by whether a reasonably prudent

25    man would have published, or would have investigated before publishing."  *St. Amant* v.

26    *Thompson*, 390 U.S. 727, 731 (1968).  Instead, to show recklessness in the actual malice (*i.e.*

27    "constitutional malice") sense of the phrase, Plaintiffs must plead such actual malice and, if they

28    do so, ultimately present "sufficient evidence to permit the conclusion that the defendant in fact

- 17 -

1    entertained serious doubts as to the truth of his publication." *Id.*; *see also Bose Corp.* v.

2    *Consumer Union of the United States, Inc.*, 466 U.S. 485, 511 n.30 (1984) (stating that there is no

3    "actual malice" unless "the defendant realized that his statement was false or [] *subjectively*

4    entertained serious doubt as to the truth of his statement") (emphasis added); *Church of*

5    *Scientology International* v. *Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (stating that actual malice

6    requires proof of "speaker's *subjective* doubts about the truth of the publication") (emphasis

7    added); *Long* v. *Arcell*, 618 F.2d 1145, 1147 (5th Cir. 1980) ("The test of actual malice is not

8    whether the defendant acting as a reasonable publisher would have acted under the

9    circumstances.  Rather, the inquiry focuses on the defendant's state of mind at the time of

10   publication.").

11          Courts have explicitly held that the actual malice standard applies with full force to claims

12   (like Plaintiffs') made against Defendants regarding their rating opinions.  For example, in

13   *County of Orange*, the plaintiff, Orange County, sued S&P for breach of contract and professional

14   negligence, arising out of allegedly "inaccurate" ratings of the County's debt.  The County

15   claimed that as a result of relying on S&P's ratings, it incurred large debts and was forced to

16   declare bankruptcy.  The court granted S&P's motion for summary judgment in part, finding that

17   the County's debt obligation was a matter of public importance and holding that the claims were

18   subject to the actual malice standard.  *County of Orange* v. *McGraw Hill Cos.*, 245 B.R. 151, 157

19   (C.D. Cal. 1999) (affirming finding that "[b]ecause the County alleges harm arising from S&P's

20   expressive activity," *i.e.*, its published credit ratings, "the County must . . . satisfy the heightened

21   pleading standards of the First Amendment") (internal quotations omitted).

22          Similarly, in the *Enron* case, plaintiff's failure to plead actual malice provided an

23   independent basis for dismissal of plaintiff's claims against all three Defendants.  *See Enron*, 511

24   F. Supp. 2d at 825 (dismissing claims because plaintiff "ha[d] not alleged facts showing that the

25   Rating Agencies were at fault because they knew or had significant suspicions that their

26   statements were false and thus acted with actual malice").  In reaching its determination, the

27   Court cited, among other authorities, the Supreme Court's decision in *Harte-Hanks*

28   *Communications, Inc.* v. *Connaughton*, 491 U.S. 657, 688 (1989), which held that "failure to

- 18 -

1   investigate before publishing, even when a reasonably prudent person would have done so, is not

2   sufficient to establish reckless disregard."

3       The same result was reached in *First Equity Corp. of Florida* v. *Standard & Poor's Corp.*,

4   690 F. Supp. 256 (S.D.N.Y 1988), *aff'd on other grounds*, 869 F.2d 175 (2d Cir. 1989).  In that

5   case, the Court granted summary judgment to S&P in a case brought by disgruntled investors who

6   claimed to have relied to their detriment not on S&P's ratings, but on S&P's description of certain

7   convertible bonds in an S&P publication entitled *Corporation Records*.  *Id.* at 256.  Applying the

8   traditional First Amendment actual malice standard, the court found that the plaintiff failed to put

9   forth "'sufficient evidence to permit the conclusion that the defendant in fact entertained serious

10  doubts as to the truth of his publication.'"  *Id.* at 259 (quoting *St. Amant*, 390 U.S. at 731).  *See*

11  *also Compuware Corp.*, 499 F.3d at 526-28 (affirming dismissal of claims based on the alleged

12  falsity of a Moody's rating opinion in the absence of actual malice).

13      Here, Plaintiffs make no allegations that, even on the most generous reading, could satisfy

14  the actual malice test.  At most, the Amended Complaint contains legal conclusions that seek to

15  parrot the language of actual malice.  (*E.g.*, AC at 14.)  Merely repeating the standard, however,

16  is not sufficient as a matter of law.  *See Barger* v. *Playboy Enterprises, Inc.*, 564 F. Supp. 1151,

17  1156 (N.D. Cal. 1983), *aff'd*, 732 F.2d 163 (9th Cir. 1984) (holding that conclusory allegation

18  that defendant acted "recklessly" was insufficient to constitute an allegation of actual malice).

19  *See also Shamley* v. *ITT Corp.*, 869 F.2d 167, 173 (2d Cir. 1989) (merely asserting that the

20  defendants acted with malice is not sufficient, for an allegation of malice "must be supported by

21  sufficient evidentiary facts").  Plaintiffs' claims must therefore be dismissed as a matter of law.

22  ## V.   PLAINTIFFS FAIL TO STATE A CLAIM FOR AIDING AND ABETTING

23      Plaintiffs' attempt to introduce a new, third claim for aiding and abetting must also fail.

24  At pages 20 through 21 of the Amended Complaint Plaintiffs allege:

25

26  > Each party participated in a plan to advertise and sell over-rated and false ratings to
    > bonds to the public. . . .  Knowing said bonds were worthless, Lehman[ ] sought
    > high credit ratings from the rating agencies to carry out its plan. . . .  The defendants,
27  > in turn, benefited by receiving thousands of dollars in fees for helping to sell
    > worthless bonds to plaintiffs by issuing false ratings.  Without the help of

28

- 19 -

1
2
3

> defendants, Lehman[ ] would not have been able to carry out its fraud on investors including plaintiffs herein. . . . Defendants are therefore liable to plaintiffs for aiding and abetting Lehman[ ] in *selling worthless bonds* to plaintiffs and causing damage to plaintiffs.

4   (AC at 20-21) (emphasis added).

5   Plaintiffs do not set forth precisely *what* actionable conduct Defendants are alleged to

6   have aided or abetted.  That itself is dispositive of this claim.  *See Louis Capital Markets, L.P.* v.

7   *Refco Group Ltd.*, 801 N.Y.S.2d 490, 493 (Sup. Ct. N.Y. Co. 2005) (Ramos, J.) (where there is no

8   primary breach of fiduciary duty, the "court cannot sustain a claim for aiding and abetting such a

9   breach"); *Arb, Inc.* v. *Luz Construction, Inc.*, 972 F.2d 1336 (Table), 1992 WL 164487, at *3 (9th

10  Cir. 1992) (unpublished) ("To state a claim for aiding and abetting liability under both state and

11  federal law, [plaintiff] must plead three elements: (1) the existence of an independent primary

12  wrong; (2) [defendant's] knowledge of that wrong; and (3) [defendant's] substantial assistance in

13  the wrong.") (citing *Levine* v. *Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir. 1991) and

14  *Pasadena Unified School District* v. *Pasadena Federation of Teachers*, 140 Cal. Rptr. 41, 49 (2d

15  Dist. 1977)).

16  Plaintiffs' claim suffers from the further flaw that Plaintiffs fail to allege Defendants'

17  "knowing participation" in the unidentified alleged breach by Lehman:  Plaintiffs assert only that

18  "[D]efendants *knew, or should have known*, the bonds were worthless or of little value as

19  explained above, as they had examined the underlying financial condition supporting those bonds

20  and knew Lehman's was overleveraged and in serious financial straights as explained above."

21  (AC at 21 (emphasis added).)  As a matter of law, Plaintiffs must allege that Defendants had

22  actual knowledge of a specific wrong committed by Lehman in order to state a claim for aiding

23  and abetting that wrong.  *See Bullmore* v. *Ernst & Young Cayman Islands*, 846 N.Y.S. 2d 145,

24  148-49 (1st Dep't 2007) (under New York law, only actual knowledge of the primary actor's

25  breach of fiduciary duty will suffice); *Global Minerals & Metals Corp.* v. *Holme,* 824 N.Y.S. 2d

26  210, 217 (1st Dep't 2006) ("Actual knowledge, as opposed to merely constructive knowledge, is

27  required and a plaintiff may not merely rely on conclusory and sparse allegations that the aider or

28  abettor knew or should have known about the primary breach of fiduciary duty."); *Starlite*

- 20 -

1  *Development (China) Ltd.* v. *Textron Financial Corp.*, 2008 WL 2705395, at *11 (E.D. Cal. July

2  8, 2008) (citing *Casey* v. *U.S. Bank National Association*, 127 Cal. App. 4th 1138, 1144, 1145-46

3  (4th Dist. 2005)).  Accordingly, to the extent the allegation is that Defendants "should have

4  known" about some unspecified wrong by Lehman, it fails because an allegation of actual

5  knowledge is required.  And, to the extent that the allegation is that Defendants actually knew of

6  some wrong, it fails because the Amended Complaint is barren of any factual allegations

7  explaining what wrongdoing Defendants purportedly knew of, much less what they did to assist

8  it.

9  **CONCLUSION**

10       For the foregoing reasons, Defendants' motion to dismiss with prejudice the claims

11  asserted against them in the Amended Complaint should be granted.[5]

12  May 3, 2010

13                                   Respectfully Submitted,

14

15                                   /s/ David T. Biderman
                                     Floyd Abrams (admitted *pro hac vice*)
16                                   Adam Zurofsky (admitted *pro hac vice*)
                                     Brian Markley (admitted *pro hac vice*)
17                                   **CAHILL GORDON & REINDEL LLP**
                                     80 Pine Street
18                                   New York, New York  10005
                                     Telephone: (212) 701-3000
19                                   Facsimile: (212) 269-5420

20

21

22

_____

23  [5]      A district court has wide discretion to dismiss a complaint with prejudice if an amendment would be
24  futile.  *Cahill* v. *Liberty Mutual Ins. Co.*, 80 F.3d 336, 339 (9th Cir. 1996); *see also Gadda* v. *State Bar of
    California*, 511 F.3d 933, 939 (9th Cir. 2007) (holding that where *pro se* plaintiff "has not suggested any
25  possible way that he could cure his complaint to survive dismissal upon amendment, nor is one apparent  .
    . . amendment would be futile" and "district court properly dismissed [*pro se* plaintiff's] claims with
26  prejudice and without leave to amend").  Here, where Plaintiffs have had an opportunity to amend their
    Complaint and have still failed to cure the deficiencies that warranted dismissal of their original pleading,
27  dismissal with prejudice is plainly appropriate.  *See Sisseton-Wahpeton Sioux Tribe* v. *United States*, 90
    F.3d 351, 355 (9th Cir. 1996) ("The district court's discretion to deny leave to amend is particularly broad
28  where plaintiff has previously amended the complaint.") (citation and internal quotations omitted).

- 21 -

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO.: CIV-S-09-00543-JAM-DAD

David T. Biderman (SBN 101577)
Farschad Farzan (SBN 215194)
**PERKINS COIE LLP**
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111
Telephone: (415) 344-7000
Facsimile: (415) 344-7050

*Attorneys for The McGraw-Hill Companies, Inc.*

/s/ Keith E. Eggleton (as authorized on May 3, 2010)
James J. Coster (admitted *pro hac vice*)
**SATTERLEE STEPHENS BURKE & BURKE LLP**
230 Park Avenue, 11th Floor
New York, New York 10169
Telephone: (212) 818-9200
Facsimile: (212) 818-9606

Keith E. Eggleton (SBN 159842)
David A. McCarthy (SBN 226415)
**WILSON SONSINI GOODRICH & ROSATI**
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

*Attorneys for Defendant Moody's Investors Service, Inc.*

/s/ Jonathan A. Patchen (as authorized on May 3, 2010)
Martin Flumenbaum (admitted *pro hac vice*)
Roberta A. Kaplan (admitted *pro hac vice*)
Andrew J. Erlich (admitted *pro hac vice*)
Tobias J. Stern (admitted *pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1284 Avenue of the Americas
New York, New York 10010
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Stephen E. Taylor (SBN 58452)
Jonathan A. Patchen (SBN 237346)
**TAYLOR & COMPANY LAW OFFICES, LLP**
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208

*Attorneys for Defendant Fitch, Inc.*

- 22 -