1  DAVID T. BIDERMAN (SBN 101577)
2  FARSCHAD FARZAN (SBN 215194)
   **PERKINS COIE LLP**
3  Four Embarcadero Center, Suite 2400
   San Francisco, California  94111
4  Telephone:  (415) 344-7000
   Facsimile:   (415) 344-7050
5  Email: DBiderman@perkinscoie.com
   Email: FFarzan@perkinscoie.com
6

7  Attorneys for Defendant The McGraw-Hill Companies, Inc.

8  [Additional counsel listed on signature page]

9

10                  UNITED STATES DISTRICT COURT

11                 EASTERN DISTRICT OF CALIFORNIA

12

13  RONALD M. GRASSI and SALLY GRASSI,        Case No. 2:09-cv-00543-JAM-DAD

14                  Plaintiffs,               **DEFENDANTS' JOINT REPLY**
                                              **MEMORANDUM IN FURTHER**
15        v.                                  **SUPPORT OF THEIR MOTION TO**
                                              **DISMISS THE AMENDED**
16  MOODY'S INVESTOR'S SERVICE, INC.,         **COMPLAINT**
17  THE MCGRAW-HILL COMPANIES, INC.
    AND FITCH, INC.,                          Date:    July 9, 2010
18                                            Time:    10:00 a.m.
                    Defendants.               Place:   Courtroom 27
19                                            Judge:   Hon. Dale A. Drozd

20

21

22

23

24

25

26

27

28

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:09-cv-00543-JAM-DAD

1

**TABLE OF CONTENTS**

2

Page

3

INTRODUCTION ................................................................................................................. 1

4
5

I.      PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM MUST
        BE DISMISSED BECAUSE, AS A MATTER OF LAW, DEFENDANTS
        DID NOT OWE PLAINTIFFS A DUTY OF CARE ............................................... 2

6
7

II.     PLAINTIFFS HAVE FAILED TO PLEAD ADDITIONAL ELEMENTS
        NECESSARY TO STATE A CLAIM FOR NEGLIGENT
        MISREPRESENTATION OR FRAUD.................................................................... 5

8
9

III.    PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM IS
        BARRED BY THE FIRST AMENDMENT ........................................................... 7

10

IV.     PLAINTIFFS FAIL TO STATE A CLAIM FOR AIDING AND
        ABETTING........................................................................................................... 10

11

CONCLUSION ................................................................................................................... 10

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

**Case Law**

4

*44 Liquormart, Inc.* v. *Rhode Island*, 517 U.S. 484 (1996) ............................ 9

5

*Abu Dhabi Commercial Bank* v. *Morgan Stanley & Co.*, 651 F. Supp. 2d
    155 (S.D.N.Y. 2009) ........................................................................ 8

6

*Anderson* v. *Deloitte & Touche LLP*, 56 Cal. App. 4th 1468 (1st Dist.
    1997) .................................................................................................. 4-5, 6

7

*Bily* v. *Arthur Young & Co.*, 3 Cal. 4th 370 (1992) .............................................. 2, 3, 4, 5

8

*Bolger* v. *Youngs Drug Products Corp.*, 463 U.S. 60 (1983) ............................... 9

9

*Bose Corp.* v. *Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984)................... 9

10

*Chapman* v. *Chronicle*, No. C 07-4775 SBA, 2009 WL 102821 (N.D.
    Cal. Jan. 14, 2009) ........................................................................... 5n

11

12

*Commodity Trend Services, Inc.* v. *Commodity Futures Trading
    Commission*, 149 F.3d 679 (7th Cir. 1998)........................................ 9

13

*Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520
    (6th Cir. 2007)................................................................................... 6, 8

14

15

*County of Orange* v. *McGraw Hill Cos.*, 245 B.R. 151 (C.D. Cal. 1999) ............ 8

16

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation*, 511 F.
    Supp. 2d 742 (S.D. Tex. 2005) ......................................................... 8

17

*In re Fitch, Inc.*, 330 F. 3d 104 (2d Cir. 2003).................................................... 7

18

*Gadda* v. *State Bar of California*, 511 F.3d 933 (9th Cir. 2007)......................... 5n-6n

19

*In re Glenfed, Inc. Securities Litigation*,
    42 F.3d 1541 (9th Cir. 1994), *superseded by statute on other grounds*................ 6

20

*Guenther* v. *Cooper Life Sciences*, 759 F. Supp. 1437 (N.D. Cal. 1990) ............. 2-3

21

*Hoffman* v. *Capital Cities/ABC, Inc.*, 255 F.3d 1180 (9th Cir. 2001) ................. 9

22

*Jefferson County School District No. R-1* v. *Moody's Investor's
    Services, Inc.*, 175 F.3d 848 (10th Cir. 1999) ................................... 8

23

24

*In re Lehman Bros. Securities & ERISA Litig.*, 684 F. Supp. 2d 485 (S.D.N.Y.
    2010)................................................................................................. 7

25

*Lowe* v. *Securities & Exchange Commission*, 472 U.S. 181 (1985)..................... 9

26

27

28

ii

1

**Page**

*New Jersey Carpenters Health Fund* v. *DLJ Mortgage Capital Inc.*, No. 08-5653, 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010) .................................. 6

*New Jersey Carpenters Vacation Fund* v. *Royal Bank of Scotland Group, PLC*, No. 08 CV 5093, 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) ............................................................................................................ 6

*Nutmeg Securities, Ltd.* v. *McGladrey & Pullen*, 92 Cal. App. 4th 1435 (2d Dist. 2001) ......................................................................................... 3-4

*Nycal Corp.* v. *KPMG Peat Marwick LLP*, 688 N.E.2d 1368 (Mass. 1998) .............................................................................................................. 3

*Ronconi* v. *Larkin*, 253 F.3d 423 (9th Cir. 2001).................................................. 7

*In re Scott Paper Co. Securities Litigation*, 145 F.R.D. 366 (E.D. Pa. 1992) ............................................................................................................. 10

*Securities & Exchange Commission* v. *Wall St. Publishing Institute, Inc.*, 851 F.2d 365 (D.C.Cir. 1988), *cert. denied*, 489 U.S. 1066 (1989)............................................................................................................ 9-10

*Simpson* v. *Specialty Retail Concepts, Inc.*, 908 F. Supp. 323 (M.D.N.C. 1995)................................................................................................................ 3n

*Tsereteli* v. *Residential Asset Securitization Trust* 2006-A8, No. 08 CV 10637, — F. Supp. 2d. —, 2010 WL 816623 (S.D.N.Y. Mar. 11, 2010) ............................................................................................................. 6

**Treatises**

L. Tribe, *American Constitutional Law* (2d ed. 1988)........................................ 9

**Additional Authority**

Restatement (Second) of Torts, Tent. Draft No. 11 § 552 ................................... 5

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

1  Defendants The McGraw-Hill Companies, Inc. ("McGraw-Hill"), Moody's Investors

2  Service, Inc. ("Moody's")[1], and Fitch, Inc. ("Fitch") (collectively "Defendants"), respectfully

3  submit this joint reply memorandum in further support of their motion seeking dismissal of the

4  claims asserted against them in the Amended Complaint ("AC").

5  **INTRODUCTION**

6  Plaintiffs admit that the pleading requirements of the Federal Rules of Civil Procedure

7  present "an elusive challenge" in this case.  Pl. Opp. at 5.  Indeed, their opposition brief confirms

8  this Court's suspicion that they cannot "file an amended complaint that [meets] federal pleading

9  standards and state a cognizable claim."  Mar. 26, 2010 Order, Dkt. No. 79, at 10.  Rather than

10  abiding by the Court's instruction in that Order that they "comply with the requirements of Rules

11  8 and 9 to allege facts that establish all elements of the claims alleged and . . . provide the

12  specificity required for the fraud claim," Plaintiffs urge the Court to accept a stew of articles,

13  transcripts of Congressional testimony, excerpts from recent books, Internet blogs, and other

14  general public statements about rating agencies and/or the nation's financial crisis.   These

15  allegations — which Plaintiffs themselves characterize merely as "circumstantial evidence" — are

16  wholly inadequate to state a claim.  Pl. Opp. at 7.

17  Unable to make well-pleaded allegations concerning the specific bonds that they

18  purchased and the ratings assigned to those bonds, Plaintiffs rely on extralegal appeals based on

19  their notion of "common sense," arguing for example that "at this point in time" there is not

20  "really any doubt . . . that the rating agencies were over-rating bonds for fees, and the public lost

21  million of dollars in the process."  Pl. Opp. at 6, 9.  As explained below, and in Defendants' prior

22  submissions, such allegations are simply not sufficient under the law, as they "fall[] far short of

23  stating a plausible, cognizable claim against any defendant."  Mar. 26, 2010 Order, Dkt. No. 79, at

24  9.

25  In the alternative (and in tacit recognition of their continuing failure to state a claim)

26  Plaintiffs' May 21 opposition papers also seek leave to file *yet another* Complaint — a request

27

28  _____

[1]  Moody's is erroneously identified in the caption as Moody's Investor's Service, Inc.

1    that this Court denied on May 26.  *See* May 26, 2010 Order, Dkt. No. 94.  Plaintiffs' *pro se* status,

2    especially when one of the Plaintiffs is an attorney, does not excuse the application of the Federal

3    Rules or the fundamental principles of New York and California law, discussed at length in

4    Defendants' opening brief.  Because Plaintiffs have now clearly and unmistakably demonstrated

5    that their claims rest on speculation and conjecture, rather than well-pleaded allegations of

6    specific wrongdoing by Defendants, their claims must be dismissed with prejudice.

7    **I.      PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM MUST BE
              DISMISSED BECAUSE, AS A MATTER OF LAW, DEFENDANTS DID**
8    **         NOT OWE PLAINTIFFS A DUTY OF CARE**

9              Plaintiffs do not contest that to state a claim for negligent misrepresentation under either

10   New York or California law, they must allege that Defendants owed them a duty of care.  Yet

11   Plaintiffs do not — and obviously cannot — allege that they stood in near-privity with

12   Defendants (as New York law requires) or were otherwise members of a limited group for whose

13   benefit Defendants chose to communicate their ratings, as required by the California Supreme

14   Court's decision in *Bily* v. *Arthur Young & Co.*, 3 Cal. 4th 370 (1992).  Instead, Plaintiffs urge the

15   Court to recognize an exception to these standards, basing their argument on three cases, none of

16   which actually advance their claims.[2]

17             First, Plaintiffs rely on *Guenther* v. *Cooper Life Sciences, Inc.*, 759 F. Supp. 1437 (N.D.

18   Cal. 1990) (which they incorrectly describe as a Ninth Circuit decision), contending that it stands

19   for the proposition that all members of the general investing public are owed a duty of care every

20   time Defendants broadly disseminate credit rating opinions.  Notably, this is the same opinion

21   cited at length in Plaintiffs' August 17, 2009 Supplemental Opposition to Defendants' original

22   motion to dismiss.  *See* Suppl. Opp. to Defs.' Mot. to Dismiss, dated Aug. 17, Dkt. No. 66, at 2-4.

23   Plaintiffs sought leave to file that supplemental brief so that they could put this decision before

24   the Court.  The Court agreed to accept the additional submission, then granted Defendants'

25   
26   ───────────────────────
     [2]    Plaintiffs incorrectly presume the application of California law to this dispute, despite
     having sued three parties headquartered in New York for alleged misrepresentations that were
27   issued and disseminated from New York in connection with bond offerings by a New York-based
     investment bank.  As explained in Defendants' prior submissions, the point is ultimately moot
     since Plaintiffs' claims fail under the laws of either State.  *See* Defts' Mot. to Dismiss at 4, n.1.
28

                                                         2

1   motion.  The *Guenther* decision provides no more support for Plaintiffs' argument now than it did

2   last summer.  As Defendants explained in their briefs supporting the original motion, *Guenther*

3   was decided pursuant to Minnesota (not California) law; it predates the California Supreme

4   Court's seminal decision in *Bily* by *two years*; and in any event does not begin to stand for the

5   sweeping proposition that Plaintiffs seek to advance.  *See* Suppl. Reply in Support of Mot. to

6   Dismiss, dated Sept. 1, 2009, Dkt. No. 69, at 2-6.

7          Indeed, putting aside that it was decided under Minnesota law and that it predates

8   *Bily*, the decision in *Guenther* is inapposite here because, among other things, the auditor

9   defendant in that case had formally and expressly consented to having its reports included in a

10   prospectus that was prepared for a narrow purpose — to sell stock to investors.  This was a

11   critical fact in the court's decision, which hinged on the plaintiffs' allegations that the auditors

12   were aware and intended that their allegedly misleading audit reports would be used for this

13   specific purpose.  *See Guenther*, 759 F. Supp. at 1443.  Thus, *Guenther* does not stand for the

14   proposition, advanced by Plaintiffs here, that entities such as Defendants, who (i) publish

15   opinions broadly around the world for a wide range of potential uses and (ii) specifically state that

16   their ratings are not recommendations and investors should not rely on them in making any

17   investment decision, owe a duty of care to anyone who might happen to read and later claim to

18   have relied on those opinions for some purpose.  *See Nycal Corp.* v. *KPMG Peat Marwick LLP*,

19   688 N.E.2d 1368, 1373-74 (Mass. 1998) (distinguishing *Guenther* on the grounds that "[a]t the

20   time the audit was being prepared, the plaintiff was an unknown, unidentified potential future

21   investor in [the defendant's client]").  There is no allegation here that the Defendants formally

22   and expressly consented to have their ratings reports disseminated to Plaintiffs for use in the

23   manner alleged here.  *Guenther* is accordingly entirely inapplicable.[3]

24          Plaintiffs also rely heavily on *Nutmeg Securities, Ltd.* v. *McGladrey & Pullen*, 92 Cal.

25   _____

26   [3]    Plaintiffs' citation to a North Carolina district court decision, *Simpson* v. *Specialty Retail
     Concepts, Inc.*, 908 F. Supp. 323 (M.D.N.C. 1995) which cited approvingly to *Guenther* (but

27   which did not mention the California Supreme Court's decision in *Bily*), is similarly
     unpersuasive, both in its reasoning and given its ultimate reliance on North Carolina state law.

28   *See* Pl. Opp. at 14-15.

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:09-cv-00543-JAM-DAD

1   App. 4th 1435 (2d Dist. 2001), for the proposition that the "limited group" requirement of *Bily*

2   does not apply where a complaint alleges that a defendant failed to act "independent[ly]" and

3   "knowingly assisted  . . . in preparing false or misleading financial reports[.]"  Pl. Opp. at 14.

4   What Plaintiffs fail to acknowledge is that the plaintiff in that case was not a member of the

5   general investing public, but rather an underwriter who alleged specifically that the defendant

6   auditor issued false and misleading reports "*knowing and intending*" that plaintiff would rely on

7   them when it agreed to underwrite the relevant offering.  92 Cal. App. 4th at 1437-38 (emphasis

8   added)  Indeed, the complaint alleged that the defendant made representations intended to assuage

9   specific concerns expressed by the plaintiff during the course of the relevant transaction:

10
11          While proceeding with the steps necessary for the IPO, [Plaintiff] raised questions
            about [the audited company's] accounting practices.  In response to [Plaintiff's]
12          concerns, [the auditor] assisted [the company] in the preparation of a letter
            assuring [Plaintiff that] 'the statements set forth in the registration statement . . .
13          are true and correct . . . .' These statements were untrue and [the auditor] *was
            aware these untrue statements would be communicated to [Plaintiff], and
14          intended [Plaintiff] to rely upon them*.

15   *Id.* at 1441 (emphasis added).   In reaching its decision, the court in *Nutmeg* drew clear

16   distinctions between plaintiffs such as the underwriter in that case, and other potential plaintiffs

17   (such as those in this action) who would constitute the sort of limitless group recognized by *Bily*.

18   *Id.* at 1445, 1447 (observing that "IPO underwriters are a sufficiently 'narrow and circumscribed

19   class of persons'" with "'sufficiently specific parameters' to allow the auditor to assess the scope

20   of its liability when it undertakes the audit and thus engage in its own 'private ordering' to

21   manage the risk.").[4]  Put simply, *Nutmeg* says nothing that could fairly be read to extend a duty of

22   care to members of the general investing public.

23          Finally, Plaintiffs rely on *Anderson* v. *Deloitte & Touche LLP*, 56 Cal. App. 4th 1468 (1st

24   Dist. 1997), which also fails to support their duty of care arguments.  In *Anderson*, defendants

25   _____

26   [4]    Plaintiffs' various contentions that *Bily* "may not be controlling" because, among other
      things, it involved a claim under the Securities Exchange Act, are unavailing.  Pl. Opp. at 13.
27   Although the California Supreme Court's opinion in *Bily* did discuss federal securities law
      standards, the Court did not adjudicate any federal securities claim, but rather expressly addressed
28   standards relevant to the very sort of common law negligent misrepresentation claim raised here.

4

1    made alleged misstatements in connection with privately held limited partnerships formed to

2    acquire four California wineries.  The alleged misstatements were made in a "confidential

3    offering memorandum" (*id*. at 1472) that was intended "for the specific purpose of attracting

4    investors" to the four partnerships, and could not "reasonably be understood to have any other

5    purpose."  *Id*. at 1478.  The facts of the case are thus plainly distinguishable from *Bily*, in which

6    plaintiffs (just like the Plaintiffs here) were part of a "very large class of persons whom almost

7    any negligently given information may foreseeably reach and influence[.]"  *Bily*, 3 Cal. 4th at 394

8    (quoting Restatement (Second) of Torts, Tent. Draft No. 11 § 552 at 56 (Apr. 15, 1965)).

9            Contrary to Plaintiffs' contention, these three cases do nothing to erode the decision in

10   *Bily* (much less the even more exacting requirements of New York law) and do not begin to

11   support Plaintiffs' novel argument that they — along with any number of others around the world

12   who may claim to rely on Defendants' ratings — were owed a duty of care.  Any finding to the

13   contrary would be unprecedented and would render meaningless the well-established

14   requirements of New York and California law.

15   **II.    PLAINTIFFS HAVE FAILED TO PLEAD ADDITIONAL**
16   **        ELEMENTS NECESSARY TO STATE A CLAIM FOR**
     **        NEGLIGENT MISREPRESENTATION OR FRAUD**
17
             As demonstrated in Defendants' prior submissions, Plaintiffs fail to allege important
18
     elements required to state claims for negligent misrepresentation and fraud, much less do they
19
     satisfy the heightened pleading requirements of Rule 9(b).  While Plaintiffs' opposition brief
20
     continues to lament the pleading requirements to which they — as well as other litigants — are
21
     bound (calling them, among other things, "rather contradictory" and a "subtle form of pre-
22
     emption," Pl. Opp. at 7), the requirements are well-established and cannot be ignored, even in the
23
     case of a *pro se* plaintiff.[5]
24

25   _____
     [5]      *See Chapman* v. *Chronicle*, No. C 07-4775 SBA, 2009 WL 102821, at *2 (N.D. Cal. Jan.
26   14, 2009) (recognizing that *pro se* litigant's status as such "does not relieve the party of the
     burden of alleging sufficient facts on which a recognized legal claim could be based" and that
27   "[b]ald assertions and conclusions of law will not suffice.") (citation and internal quotation marks
     omitted); *Gadda* v. *State Bar of California*, 511 F.3d 933, 939 (9th Cir. 2007) (holding that where
28   *pro se* plaintiff "has not suggested any possible way that he could cure his complaint to survive

                                        5
     DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
     Case No. 2:09-cv-00543-JAM-DAD

1    Unable to make specific, well-pleaded allegations in support of their claims, Plaintiffs

2    simply assert in the broadest possible fashion that "no professional analyst who objectively and

3    professionally examined Lehman's financial condition . . . could have . . . concluded the subject

4    bonds warranted an Invest grade rating."  Pl. Opp. at 28.  This vague and conclusory assertion

5    does not even remotely approach the level of specificity required by the case law cited in

6    Defendants' opening brief.  Among other things, a complaint must allege not only "the time,

7    place and content" of each alleged misstatement, but also the "circumstances indicating

8    falseness."  *See In re Glenfed Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994), *superseded*

9    *by statute on other grounds*.

10    As set forth in Defendants' prior submissions, the burden is highest in a case regarding

11    alleged misstatements of opinion, where Plaintiffs must allege specific facts to show that the

12    speaker (in this case Defendants' credit rating analysts) held a "disbelief in the truth of the

13    statement" — *i.e.,* that they "did not believe the representation to be true."  *See e.g. Anderson*, 56

14    Cal. App. 4th at 1476; *Compuware Corp.* v. *Moody's Investors Services, Inc.*, 499 F.3d 520, 529

15    (6th Cir. 2007); *New Jersey Carpenters Health Fund* v. *DLJ Mortgage Capital Inc.*, No. 08-5653,

16    2010 WL 1473288, at *7-*8 (S.D.N.Y. Mar. 29, 2010); *New Jersey Carpenters Vacation Fund* v.

17    *Royal Bank of Scotland Group, PLC*, No. 08 CV 5093, 2010 WL 1172694, at *13-*14 (S.D.N.Y.

18    Mar. 26, 2010); *Tsereteli* v. *Residential Asset Securitization Trust 2006-A8*, No. 08 CV 10637, —

19    F. Supp. 2d. —, 2010 WL 816623, at *5, (S.D.N.Y. Mar. 11, 2010).  Plaintiffs plainly have not

20    satisfied this standard — a point they all but acknowledge on page 29 of their opposition brief

21    where they assert that "[o]nce discovery is permitted," they will "examine all the financial records

22    specifically in defendants' possession and can and will be more specific as to what was reviewed,

23    if anything, and what should have been noted by each analyst."  Plaintiffs further tellingly assert

24    that "if so required, [they] will also plead more details *to the best of their actual belief and*

25    *pursuant to information and belief* (based on dozens of financial articles . . ., transcripts of

26    _____

27    dismissal upon amendment, nor is one apparent  . . . amendment would be futile" and "district
      court properly dismissed [*pro se* plaintiff's] claims with prejudice and without leave to amend").

28

6

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:09-cv-00543-JAM-DAD

1   speeches from financial experts . . ., remarks set forth in books . . ., and several highly respected

2   blogs."  Pl. Opp. at 29.  (emphasis added).

3          Of course, it is not *Plaintiffs'* belief that matters, but the actual subjective belief of the

4   analysts responsible for the ratings that must be plead with particularity.  In this regard, it is not

5   enough for Plaintiffs simply to second guess Defendants' analysts' ratings opinions, as they do in

6   their opposition brief.  *See, e.g.*, Pl. Opp. at 25-26  ("So, why didn't defendants' analysts note

7   [Lehman's increasing leverage] and down-grade the '04 bond, and either not rate or rate much

8   lower the '08 bond in any event, not ever downgrade the plaintiffs['] bonds??").  Plainly, this

9   sort of post-hoc critique falls far short of the stringent requirements of the Federal Rules and well-

10  established case law.  *See Ronconi* v. *Larkin,* 253 F.3d 423, 430 n.12 (9th Cir. 2001) ("Fraud by

11  hindsight is not actionable.") (internal citation and quotation omitted).  *See also In re Lehman*

12  *Bros. Securities & ERISA Litig.*, 684 F. Supp. 2d 485, 495 (S.D.N.Y. 2010) (holding that

13  allegations critical of Defendants' credit rating process were "insufficient to support an inference

14  that the ratings agencies did not actually hold the opinion . . . to justify each rating at the time

15  each rating was issued.").

16  **III.    PLAINTIFFS' NEGLIGENT MISREPRESENTATION CLAIM IS
        BARRED BY THE FIRST AMENDMENT**

17

18         As previously established (*See* Defs.' Joint Mem. in Support of Mot. to Dismiss AC, at

19  16-19), Plaintiffs' negligent misrepresentation claim is also barred by fundamental principles of

20  constitutional law because the publicly-disseminated credit ratings that Plaintiffs attack are non-

21  actionable expressions of opinion and because Plaintiffs fail to allege that the Rating Agencies

22  acted with actual malice.

23         Plaintiffs respond by citing two decisions, neither of which actually advance their

24  argument at all.  First, *In re Fitch, Inc.*, 330 F. 3d 104 (2d Cir. 2003) — also cited at length in

25  Plaintiffs' unsuccessful July 2, 2009 opposition to Defendants' original motion to dismiss — is

26  entirely inapposite.  *See* Pl. Opp. at 31; Dkt. No. 55, at 22-25.  That case did not address the First

27  Amendment, but rather the New York Shield law for journalists, and did involve in any way the

28  potential liability arising from ratings.  Indeed, it concerned Fitch's response to a non-party

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:09-cv-00543-JAM-DAD

1  subpoena (not an alleged tort) and turned in part on allegations that Fitch had been involved in

2  developing a structured finance transaction — an allegation that could not exist in this case,

3  which involves ratings of corporate bonds.

4          Nor is Plaintiffs' argument advanced by the decision in *Abu Dhabi Commercial Bank* v.

5  *Morgan Stanley & Co.*, 651 F. Supp. 2d 155 (S.D.N.Y. 2009), which actually serves to reinforce

6  Defendants' First Amendment protections in this case.  The court in *Abu Dhabi* recognized

7  unequivocally that "[i]t is well-established that under typical circumstances, the First Amendment

8  protects rating agencies, subject to an 'actual malice' exception, from liability arising out of their

9  issuance of ratings and reports because their ratings are matters of public concern."  *Id.* at 175.

10 The decision is therefore in accord with the extensive body of case law that has repeatedly and

11 consistently recognized that, at its core, the Rating Agencies' speech—opinions about securities

12 that are disseminated to the investing public—implicate the First Amendment and are entitled to

13 its protections.  *See, e.g., Compuware*, 499 F.3d at 529; *Jefferson County School District No. R-1*

14 v. *Moody's Investor's Services, Inc.*, 175 F.3d 848, 856 (10th Cir. 1999); *County of Orange* v.

15 *McGraw Hill Cos.*, 245 B.R. 151, 157 (C.D. Cal. 1999); *In re Enron Corp. Securities, Derivative*

16 *& "ERISA" Litigation*, 511 F. Supp. 2d 742, 808-27 (S.D. Tex. 2005).

17         While acknowledging that the First Amendment applies in "typical circumstances," the

18 Court in *Abu Dhabi* found that at the motion to dismiss stage it was bound to accept the

19 affirmative and specific allegations made by the Plaintiff in that case that the ratings on a

20 particular and identified issuer "were never widely disseminated, but were provided instead in

21 connection with a private placement to a select group of investors."  651 F. Supp. 2d at 176.  As

22 such, the court held that dismissal on First Amendment grounds was not appropriate at that

23 procedural stage.  No such circumstances are, or could be, alleged here.  Indeed, Plaintiffs have

24 repeatedly acknowledged in their pleadings and their briefs to this Court that Defendants'

25 Lehman ratings were disseminated to the public at large, (*See* AC, at 4, 8, 13, 20; Pl. Opp. at 15),

26 a fact that is also evident from the reports themselves.  *See* May 3, 2010 Declaration of David

27 Biderman in Support of Defendants' Motion to Dismiss the Amended Complaint, Ex. 1; *see also*

28

1   June 15, 2009 Declaration of Keith E. Eggleton in Support of Moody's Motion to Dismiss, Ex. B

2   (Dkt. No. 46); June 15, 2009 Declaration of Tobias J. Stern in Support of Fitch's Motion to

3   Dismiss, Ex. A (Dkt. No. 53).  There can be no serious dispute, therefore, that the ratings in this

4   case fall within the "typical circumstances" consistently recognized by the courts.

5           Plaintiffs' alternative argument that Defendants' ratings amount to commercial speech and

6   should thus be afforded a lesser protection under the First Amendment is also unavailing.  Pl.

7   Opp. at 34-36.  In *Hoffman* v. *Capital Cities/ABC, Inc.*, 255 F.3d 1180 (9th Cir. 2001), cited by

8   Plaintiffs, the Ninth Circuit explained that "the 'core notion of commercial speech' is that it 'does

9   no more than propose a commercial transaction.'"  255 F.3d at 1184 (quoting *Bolger* v. *Youngs*

10  *Drug Products Corp.,* 463 U.S. 60, 66 (1983)).  *See also 44 Liquormart, Inc.* v. *Rhode Island,*

11  517 U.S. 484, 499 (1996) ("The entire commercial speech doctrine, after all, represents an

12  accommodation between the right to speak and hear expression *about* goods and services and the

13  right of government to regulate the sales *of* such goods and services." (quoting L. Tribe,

14  American Constitutional Law § 12-15, p. 903 (2d ed. 1988)) (emphasis in original).

15          Plaintiffs misapprehend this law, suggesting that speech about commerce is by its nature

16  "commercial speech" entitled to lesser First Amendment protection.   To the contrary, courts have

17  routinely held that publications about commerce, economics and — most relevant to this case —

18  the creditworthiness of issuers of debt and debt securities, are fully protected speech (not

19  commercial speech) because they have no relation to a proposed commercial transaction.  *See,*

20  *e.g. Lowe* v. *Securities & Exch. Commission,* 472 U.S. 181, 210 n. 58 (1985) ("[B]ecause we have

21  squarely held that the expression of opinion about a commercial product such as a loudspeaker is

22  protected by the First Amendment [citing *Bose Corp.* v. *Consumers Union of U.S., Inc.,* 466 U.S.

23  485, 513 (1984)], it is difficult to see why the expression of an opinion about a marketable

24  security should not also be protected."); *Commodity Trend Service, Inc.* v. *Commodity Futures*

25  *Trading Commission*, 149 F.3d 679, 686 (7th Cir. 1998) (holding that the publication of

26  "impersonal evaluations and recommendations regarding available trading options" in

27  commodities trading was not commercial speech); *Securities & Exch. Commission v. Wall St.*

28  *Publishing Institute, Inc.*, 851 F.2d 365, 372 (D.C.Cir. 1988) (holding that there is no "clear fit

9

between the commercial speech doctrine" and publications of general financial interest), *cert. denied,* 489 U.S. 1066 (1989); *In re Scott Paper Co. Sec. Litig.*, 145 F.R.D. 366, 369 (E.D. Pa. 1992) ("We see no reason why disseminators of [credit ratings] should not have as strong a claim to First Amendment protection as do disseminators of other kinds of information").

Accordingly, there is no basis here for subjecting Defendants' credit rating opinions to anything less than full First Amendment protection.

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM FOR AIDING AND ABETTING

Plaintiffs do not propose any meaningful support for their aiding and abetting claim in their opposition brief.  Confronted with the requirement that they must allege the existence of a primary tort and actual knowledge of that tort by Defendants, Plaintiffs simply repeat the applicable pleading standard, *see* Pl. Opp. at 41-44, and refer broadly to "the allegations comprising the Aiding and Abetting claim in (1) Count 3 at p. 20-21, and also (2) through-out the [First Amended Complaint]." Pl. Opp. at 44.  For the reasons stated in Defendants' opening brief, these allegations, without more, do not set forth with any specificity the actionable conduct Defendants are alleged to have aided or abetted and do not demonstrate in any fashion that Defendants knowingly contributed to such a wrong.  *See* Defs.' Joint Mem. in Support of Mot. to Dismiss AC, at 20-21.  Plaintiffs' aiding and abetting claim must therefore be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss with prejudice the claims asserted against them in the Amended Complaint should be granted.

June 7, 2010

Respectfully Submitted,


/s/ Farschad Farzan
Floyd Abrams (admitted *pro hac vice*)
Adam Zurofsky (admitted *pro hac vice*)
Brian Markley (admitted *pro hac vice*)
**CAHILL GORDON & REINDEL LLP**
80 Pine Street
New York, New York  10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420

10

1         David T. Biderman (SBN 101577)
           Farschad Farzan (SBN 215194)
2         **PERKINS COIE LLP**
           Four Embarcadero Center, Suite 2400
3         San Francisco, CA  94111
           Telephone: (415) 344-7000
4         Facsimile: (415) 344-7050

5         *Attorneys for Defendant The McGraw-Hill Companies,*
           *Inc.*
6

7

         /s/ Keith E. Eggleton
8         James J. Coster (admitted *pro hac vice*)
           **SATTERLEE STEPHENS BURKE & BURKE LLP**
9         230 Park Avenue, 11th Floor
           New York, New York  10169
10        Telephone: (212) 818-9200
           Facsimile:  (212) 818-9606
11

12        Keith E. Eggleton (SBN 159842)
           David A. McCarthy (SBN 226415)
13        **WILSON SONSINI GOODRICH & ROSATI**
           Professional Corporation
14        650 Page Mill Road
           Palo Alto, California  94304-1050
15        Telephone: (650) 493-9300
           Facsimile:  (650) 565-5100
16

17        *Attorneys for Defendant Moody's Investors Service, Inc.*

18

19

         /s/ Jonathan A. Patchen
20        Martin Flumenbaum (admitted *pro hac vice*)
           Roberta A. Kaplan (admitted *pro hac vice*)
21        Andrew J. Erlich (admitted *pro hac vice*)
           Tobias J. Stern (admitted *pro hac vice*)
22        **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
23        1284 Avenue of the Americas
           New York, New York 10010
24        Telephone: (212) 373-3000
           Facsimile:  (212) 757-3990
25

26

27

28

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:09-cv-00543-JAM-DAD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Stephen E. Taylor (SBN 58452)
Jonathan A. Patchen (SBN 237346)
**TAYLOR & COMPANY LAW OFFICES, LLP**
One Ferry Building, Suite 355
San Francisco, California  94111
Telephone: (415) 788-8200
Facsimile:  (415) 788-8208

*Attorneys for Defendant Fitch, Inc.*

70164-0002/LEGAL18461172.2

DEFENDANTS' JOINT MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 2:09-cv-00543-JAM-DAD