1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RONALD M. GRASSI and
     SALLY GRASSI,
11
                 Plaintiffs,              No. CIV S-09-0543 JAM DAD PS
12
           v.
13
     MOODY'S INVESTOR'S,                  ORDER AND
14   SERVICES, et al.,
                                          FINDINGS AND RECOMMENDATIONS
15               Defendants.

16   _____/

17          This case came before the court on July 9, 2010, for hearing of defendants' joint

18   motion to dismiss plaintiffs' first amended complaint with prejudice pursuant to Federal Rule of

19   Civil Procedure 12(b)(6).  Attorneys Joshua Rubins[1] and David A. McCarthy appeared for

20   defendant Moody's Investors Service, Inc.  Attorneys Floyd Abrams and David Taro Biderman

21   appeared for defendant The McGraw-Hill Companies, Inc., sued as Standard & Poor's.

22   Attorneys Jonathan A. Patchen and Andrew Erlich appeared for defendant Fitch, Inc.  Plaintiffs

23   Ronald Grassi and Sally Grassi, proceeding pro se, appeared on in propria persona.  The parties'

24   arguments were heard, and defendants' motion to dismiss was submitted.

25   _____

26          [1]  Joshua Rubins, Esq. appeared telephonically.  All other parties were present in court.

1

1   Having considered all written materials filed in connection with defendants'

2   motion, the parties' arguments at the hearing, and the entire file, and after conducting extensive

3   research, the undersigned will recommend that defendants' motion be granted and this case be

4   dismissed.

5                                   BACKGROUND

6   Plaintiffs filed a pro se complaint in Placer County Superior Court on January 26,

7   2009.  On the form used in California state courts to allege claims for personal injury, property

8   damage, and wrongful death, plaintiffs alleged claims of (1) negligence and (2) fraud and deceit

9   against defendants described as "Moody's Investor's Services, Standard and Poor's, Fitch" and

10  DOES 1 to 10.  (Def'ts' Notice of Removal, Ex. B.)  The three named defendants joined in

11  removing the case to federal court by notice filed February 25, 2009.  Defendants asserted federal

12  jurisdiction based on complete diversity of citizenship, with an amount in controversy exceeding

13  $75,000.

14  Plaintiffs' motion for remand was denied by order filed May 15, 2009.  (Doc. No.

15  41.)  On March 29, 2010, the defendants' separate motions to dismiss plaintiffs' original

16  pleading were granted with leave to amend.  (Doc. No. 79.)  Plaintiffs' First Amended Complaint

17  was filed on April 8, 2010.  (Doc. No. 80.)  Defendants responded by filing the joint motion to

18  dismiss now before the court.  (Doc. No. 85.)

19                      PLAINTIFFS' FIRST AMENDED COMPLAINT

20  In their amended pleading, plaintiffs allege three causes of action: (1) negligent

21  misrepresentation, (2) intentional misrepresentation, (3) aiding and abetting.  (First Am. Compl.

22  (Doc. No. 80).)  Plaintiffs allege that they are co-owners of two bonds issued by Lehman

23  Brothers and that the bonds were rated by all three defendants.  (Id. at 1.)

24  In a section of their amended complaint titled "Background Leading up to How

25  and Why the Defendants Over-Rated Lehman Brother's [sic] Corporate Bonds Which Were Then

26  Sold to Plaintiffs and Are Now Worthless," plaintiffs present conclusory assertions, opinion, and

2

argument concerning mortgage-backed securities, corporate bonds, and the role of the rating agencies in the sale of corporate bonds backed by mortgages.  (Doc. No. 80 at 3-8.)  In the final sentences of this section of the amended complaint, plaintiffs allege that they were not aware of Lehman Brothers' failing financial health, believed in the credibility and reputation of the rating agencies, purchased two corporate bonds carrying an investment grade rating by each defendant, and lost the value of their bonds and the income stream "promised" in connection with those bonds, in the amount of $145,000.00.  (Id. at 8.)

I. Claim 1:  Negligent Misrepresentation

Plaintiffs allege negligent misrepresentation by all defendants as follows: defendants assigned materially false and misleading investment grade credit ratings to the Lehman Brothers bonds purchased by plaintiffs; when the ratings were assigned, defendants knew or should have known that their representations were false and misleading because Lehman Brothers was in severe financial distress; Lehman Brothers' financial statements reflected millions of dollars of toxic and unsellable assets as well as unrealistically high valuations of several assets on Lehman Brothers' books; the rating agencies failed to downgrade their ratings of the bonds when it became common knowledge on Wall Street that Lehman Brothers was in a tenuous and declining financial condition and there was little reason to expect Lehman Brothers to avoid bankruptcy; in rating Lehman Brothers' bonds, defendants ignored or failed to take into consideration the unduly high and extremely risky leverage of approximately 44 to 1 employed by Lehman Brothers; defendants ignored or failed to take into consideration indications of financial irregularities in Lehman Brothers' financial statements from 2004-2008; defendants ignored or failed to take into consideration the fact that Lehman Brothers was carrying its assets at "fair value" despite the fact that their actual values had dropped by as much as 50% and did not support assignment of investment grade ratings to the bonds at issue; defendants did not examine the mortgages supporting the bonds that were being rated but instead used outmoded models based on mortgage default data from the 1990's through 2002 for conventional

1  mortgages; defendants failed to note in their analysis that Lehman Brothers was having

2  increasing difficulty in obtaining credit by the first quarter of 2008; defendants ignored the need

3  for, or failed to require, Lehman Brothers to increase its collateral to justify an investment grade

4  rating; defendants failed to disclose to the public that there was a conflict of interest between

5  defendants and Lehman Brothers, who was paying defendants extraordinary fees for the highest

6  ratings possible; defendants lacked the manpower to complete a professional analysis of the risks

7  inherent in the bonds at issue, given the complexity and high volume of bonds they were asked to

8  rate on a weekly basis; defendants ignored or failed to consider in their risk analysis the rapidly

9  escalating defaults of subprime-backed securities in contrast with their outdated business model

10  based on default rates pre-2003 for traditional loans.  (Id. at 8-13.)

11          Plaintiffs further allege that defendants communicated their false and misleading

12  ratings to brokerage houses throughout the United States, including plaintiffs' brokers, knowing

13  that the brokers would rely on the ratings and communicate them to their clients; defendants

14  knew that their ratings would provide assurance of the creditworthiness of Lehman Brothers,

15  which was information needed by plaintiffs and other conservative bond investors who were

16  likely purchasers of these particular bonds; communication of false ratings to brokers created

17  privity and a business and fiduciary relationship between defendants and the conservative bond

18  investing public, including plaintiffs; defendants knew that investors looking for safe investment

19  grade bonds would also be apprised of Lehman Brothers' bonds from information widely

20  available on the internet and in financial magazines and newspapers and knew that the targeted

21  investors would rely on the false and misleading ratings assigned by defendants for the purpose

22  of aiding Lehman Brothers in selling the over-priced bonds needed to shore up Lehman Brothers'

23  faltering financial condition and for the purpose of earning large sums of money in exchange for

24  assigning false and misleading ratings to the bonds.  (Id. at 13-14.)

25          Plaintiffs allege that defendants targeted a specific and limited class of investors

26  consisting of those investors looking for safe investment grade corporate bonds issued from

investment banks not likely to fail and likely to pay to maturity all that was promised under the

terms of the bonds; such investors seek safe corporate bonds paying a modest rate of return rather

than investments that might yield a higher return but at a greater risk of default; for such

investors, the primary goals are safety and preservation of capital; defendants knew that their

ratings would be communicated to such investors seeking safe investment grade bonds and

intended their ratings to benefit and guide these investors, who would be likely to factor

defendants' ratings into their purchase decisions; defendants knew that conservative bond

investors would rely on defendants' ratings in purchase decisions often involving thousands of

dollars because the targeted group has no realistic alternative to such reliance, given (a) the

complexity of the subject bonds, (b) the cost to any individual investor who retains the services

of an outside valuation firm to value bonds and their risk of default, (c) the ratings companies'

access to information not available to the average investor, and (d) the ratings companies' claim

that their ratings were made after careful, professional, objective, thorough, and honest

examination of extensive and complex financial records.  (Id. at 14-16.)

Plaintiffs allege that defendants had a duty to publish accurate information and

this duty was owed to the public at large and in particular to the conservative bond investors

targeted for sale of Lehman Brothers' corporate bonds; defendants engaged in a campaign to

attract investors like plaintiffs and in so doing were not independent analysts but acted to assist

Lehman Brothers in its sale of bogus securities instead of providing neutral, professional, and

objective analysis to the targeted investors, thereby breaching defendants' duty to plaintiffs as

members of the targeted group; defendants represented to the public that they would monitor the

companies whose bonds they rated and would adjust ratings if warranted; defendants breached

their duty to downgrade Lehman Brothers' corporate bonds prior to Lehman Brothers'

bankruptcy.  (Id. at 16-17.)

Plaintiffs allege that they relied on defendants' ratings when they purchased two

Lehman Brothers bonds rated by defendants as A1, AA-1, or A+ and that such reliance was

1   reasonable due to the complexity of Lehman Brothers' financial statements and the prohibitive

2   cost of employing an outside analyst.  Plaintiffs allege that they suffered injury when the bonds

3   became worthless after Lehman Brothers filed for bankruptcy in 2008.  Plaintiffs allege that their

4   loss, including principal and promised income, was approximately $145,000.00.  (Id. at 17-18.)

5   II.  Claim 2 Intentional Misrepresentation

6           In their second claim, plaintiffs incorporate the allegations of their first claim and

7   further allege as follows:  defendants issued ratings that were meant to indicate the risk or

8   likelihood of default of the bonds purchased by plaintiffs; defendants' ratings of plaintiffs' bonds

9   indicated that the risk of default was slight; defendants represented to the public on an ongoing

10  basis that their ratings were the result of diligent, professional, honest, and objective analysis of

11  financial records of the companies rated; the ratings of plaintiffs' bonds were not done diligently,

12  professionally, honestly, and/or objectively, but were instead done on information and belief,

13  knowingly or recklessly and pursuant to defendants' marketing arrangement, either express or

14  implied, with Lehman Brothers; Lehman Brothers required as high a rating as possible for its

15  bonds in order to sell them with the lowest interest rates possible, while defendants sought to rate

16  as many bonds as possible in order to receive fees of several thousand dollars for each rating;

17  defendants had already worked with Lehman Brothers to over-rate mortgage-backed securities in

18  order to sell them to the public and took the next step of over-rating Lehman Brothers' corporate

19  bonds without reviewing the underlying financial records and other available information about

20  Lehman Brothers; defendants assigned false and misleading ratings with the intent to induce the

21  public, including plaintiffs, to purchase over-rated bonds while defendants and Lehman Brothers

22  reaped the benefits; plaintiffs relied on defendants' ratings and paid $20,000 each for two bonds;

23  when Lehman Brothers filed for bankruptcy in September 2008, the bonds were rendered

24  worthless; plaintiffs were injured in the sum of approximately $145,000, consisting of the face

25  value of the bonds and the estimated stream of income promised with respect to the purchased

26  /////

1  bonds but not received; plaintiffs seek punitive damages for defendants' intentional and tortious

2  misconduct.  (Id. at 18-20.)

3  III.  Claim 3 Aiding and Abetting

4          In their third claim, plaintiffs incorporate the allegations of their first and second

5  claims and further allege as follows:  defendants participated in a plan to advertise and sell

6  Lehman Brothers' over-rated bonds to the public and received thousands of dollars in fees for

7  issuing false ratings of worthless bonds that Lehman Brothers could not have sold without

8  defendants' help; defendants knew or should have known that the bonds were worthless or of

9  little value because defendants knew Lehman Brothers was over-leveraged; defendants aided and

10  abetted Lehman Brothers in selling worthless bonds and caused damage to plaintiffs, who were

11  persuaded to purchase bonds in reasonable reliance on defendants' misrepresentations; plaintiffs

12  suffered damages of approximately $145,000.00 as a result of defendants' misconduct in aiding

13  and abetting Lehman Brothers in the selling of worthless bonds.  (Id. at 20-21.)

14  IV.  Prayer for Relief

15          Plaintiffs seek compensatory and punitive damages with interest, their costs and

16  expenses, and unspecified injunctive relief.  (Id. at 21-22.)

17          LEGAL STANDARDS APPLICABLE TO DEFENDANTS' MOTION

18          Once a case has been removed from state court, it is subject to the Federal Rules

19  of Civil Procedure.[2]  Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is

20  removed from a state court.").  The "expansive language" of Rule 81(c) "contains no express

21  exceptions and indicates a clear intent to have the Rules . . . apply to all district court civil

22  proceedings."  Willy v. Coastal Corp., 503 U.S. 131, 134-35 (1992).  "After removal, repleading

23  is unnecessary unless the court orders it."  Fed. R. Civ. P. 81(c)(2).  However, a pleading

24  removed from state court is subject to dismissal pursuant to Federal Rule of Civil Procedure

25

26          [2]  Federal pleading rules apply regardless of whether the substantive law at issue is state
or federal.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009).

7

12(b)(6) for failure to state a claim under the pleading standards set forth in the Federal Rules of Civil Procedure.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must satisfy the requirements of Rule 8.  A complaint that alleges fraud or mistake must also satisfy the requirements of Rule 9(b).

I. Dismissal of Claims Pursuant to the Requirements of Federal Rule of Civil Procedure 8

Rule 8 requires a party's pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The pleading must give the defendant fair notice of what the claims are and the grounds upon which those claims rest.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Although detailed factual allegations are not required by Rule 8, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

For the purpose of determining whether a complaint states a claim upon which relief may be granted, the court accepts as true the factual allegations of the complaint and construes those allegations in the light most favorable to the plaintiff.[3]  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  However, the court need not assume the truth of legal conclusions cast in the form of factual allegations.  W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

---

[3]  Pro se complaints are generally held to less stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  Here, however, plaintiff Ronald Grassi is a retired California attorney.  (Pls.' Mem. of P. & A. in Supp. of Mot. to Remand (Doc. No. 18 at 5.)  He was admitted to the bar in 1968 and was an active member of the bar until September 1, 2004, when his status was changed to inactive.  (State Bar of California: Ronald Mark Grassi, http://members.calbar.ca.gov/search/member, last viewed on June 3, 2011.)

1        The Supreme Court recently reiterated that, in order to meet the Rule 8 pleading

2   standard and survive a motion to dismiss, a complaint "must contain sufficient factual matter . . .

3   to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, ___ U.S. ___, ___, 129

4   S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility

5   when the plaintiff pleads factual content that allows the court to draw the reasonable inference

6   that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct at 1949 (citing

7   Twombly, 550 U.S. at 556).  Thus, the plausibility standard requires "more than a sheer

8   possibility that a defendant has acted unlawfully."  129 S. Ct. at 1949 (citing Twombly, 550 U.S.

9   at 556.)  If a complaint pleads facts merely consistent with a defendant's liability, the complaint

10  falls short of the line between possibility and plausibility of entitlement to relief.  129 S. Ct. at

11  1949 (citing Twombly, 550 U.S. at 557.)  Accordingly, legal conclusions and threadbare recitals

12  of the elements of a cause of action supported only by conclusory statements do not suffice and

13  are not entitled to a presumption of truth.  Id. at 1949-50.  Put another way, Rule 8 "does not

14  unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at

15  1950.  Pursuant to these standards, a court evaluating a motion to dismiss for failure to state a

16  claim must identify the plaintiff's non-conclusory factual allegations and determine whether

17  those allegations, taken as true and construed in the light most favorable to the plaintiff, plausibly

18  give rise to an entitlement to relief.

19       A complaint may be dismissed for failure to show an entitlement to relief "based

20  on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

21  cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

22  Thus, a Rule 12(b)(6) motion may challenge the court's ability to grant relief on a claim

23  governed by Rule 8, even if the plaintiff's allegations are accepted as true.

24  II.  Dismissal of Claims Pursuant to the Requirements of Federal Rule of Civil Procedure 9(b)

25       Rule 9 addresses the pleading of "special matters."  In particular, Rule 9(b)

26  requires that, "[i]n alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "'Fraud can be averred by
specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word
"fraud" is not used).'"  Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting
Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003)).  "When an entire
complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to
satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the
complaint or claim."  Vess, 317 F.3d at 1107 (9th Cir. 2003) (citing Bly-Magee v. California,
236 F.3d 1014, 1019 (9th Cir. 2001)).

Under Rule 9(b), the circumstances constituting the alleged fraud must be specific
enough to give each defendant notice of its particular misconduct so that the defendant can
defend against the charge instead of merely denying that it did anything wrong.  Kearns, 567 F.3d
at 1124 (citing Bly-Magee, 236 F.3d at 1019).  To satisfy the particularity standard of Rule 9(b),
the plaintiff must set forth more than the neutral facts necessary to identify the transaction at
issue.  Id. (citing In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994), superceded
by statute on other grounds).  This is so because "Rule 9(b) serves not only to give notice to
defendants of the specific fraudulent conduct against which they must defend, but also 'to deter
the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants]
from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from
unilaterally imposing upon the court, the parties and society enormous social and economic costs
absent some factual basis.'"  Bly-Magee, 236 F.3d at 1018 (quoting In re Stac Elecs. Sec. Litig.,
89 F.3d 1399, 1405 (9th Cir. 1996)).

Circumstances that must be stated with particularity pursuant to Rule 9(b) include
the "time, place, and specific content of the false representations as well as the identities of the
parties to the misrepresentations."  Sanford v. Memberworks, Inc., 625 F.3d 550, 558 (9th Cir.
2010) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)).  See also
Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007); Miscellaneous Serv. Workers, Drivers

& Helpers v. Philco-Ford Corp., 661 F.2d 776, 782 (9th Cir. 1981) (affirming district court's dismissal of the plaintiffs' deceit and misrepresentation claims where plaintiffs failed to allege with sufficient particularity the content of the false representations and identities of the parties to the misrepresentations).  "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged fraudulent scheme.'" Swartz, 476 F.3d at 765 (quoting Moore v. Kayport Package Express, 885 F.2d 531, 541 (9th Cir. 1989)).

Where fraud is not an essential element of all claims alleged in a pleading, only the claims that allege fraud are subject to Rule 9(b)'s heightened pleading standard.  Kearns, 567 F.3d at 1124 (citing Vess, 317 F.3d  at 1105).  When fraud is not an essential element of a claim but the plaintiff includes averments of fraud, any averments that do not satisfy the requirements of Rule 9(b) "should be 'disregarded,' or 'stripped' from the claim for failure to satisfy Rule 9(b)."  Id.  However, if a plaintiff alleges "a unified course of fraudulent conduct" and relies entirely on that course of conduct as the basis of a claim, "the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."  In re Daou Systems, Inc., 411 F.3d 1006, 1027 (9th Cir. 2005) (quoting Vess, 317 F.3d at 1103-04).  See also Sanford, 625 F.3d at 558.

## ANALYSIS

### I.  The Parties' Arguments

Defendants assert that plaintiffs have not cured the defects of the claims of fraud and negligent misrepresentation alleged in their original complaint and have added a third claim that is equally defective.  Defendants move to dismiss all three claims pursuant to Rule 12(b)(6) on the ground that plaintiffs' pleading fails to state any claim on which relief can be granted.

Defendants argue first that plaintiffs' claim for negligent misrepresentation must be dismissed because plaintiffs have once again failed to demonstrate that the defendants owed the plaintiffs any duty of care, which is the fundamental prerequisite to a negligent

misrepresentation claim.  Defendants contend that plaintiffs have failed to allege that they stood in privity or its functional equivalent with defendants, as required by New York law, or that they were otherwise members of a limited group of intended beneficiaries of defendants' credit ratings, as required by California law.

Second, defendants argue that plaintiffs have failed to allege with particularity all of the essential elements of their claims for fraud and negligent misrepresentation.  With respect to plaintiffs' claim for negligent misrepresentation, defendants cite the lack of substantive allegations about the ratings of the Lehman bonds that plaintiffs' purchased and the complete failure to allege that any defendant made any false statement in connection with the specific bonds at issue, thereby failing to provide any basis for a conclusion that the specific ratings at issue were not genuinely held by those at the agencies who prepared them.  With respect to plaintiffs' claim for fraud, defendants point to the lack of any allegation that the relevant rating analysts did not genuinely believe in the credit ratings they placed on the bonds purchased by plaintiffs and therefore acted with the required element of scienter.

Third, defendants argue that plaintiffs' negligent misrepresentation claim is barred by fundamental principles of constitutional law because the published credit ratings are non-actionable expressions of opinion and plaintiffs have failed to allege that defendants acted with actual malice.

Finally, defendants argue that plaintiffs' new claim for aiding and abetting must be dismissed because plaintiffs have failed to set forth what actionable conduct defendants are alleged to have aided or abetted and have failed to allege knowing participation by defendants in any such misconduct.

In opposition to defendants' motion, plaintiffs cite allegations in their amended complaint that, in their view, satisfy the plausibility test of Rule 8.  Plaintiffs also assert that defendants raise questions of fact and legal issues that are beyond the scope of a motion to dismiss brought pursuant to Rule 12(b)(6).

1    In reply, defendants reiterate their arguments and challenge the case authority

2  cited by plaintiffs in opposition to defendants' motion to dismiss.

3    Below the court will first address plaintiffs' request for judicial notice and then

4  turn to the legal issues raised by the pending motion to dismiss.

5  II.  Plaintiffs' Requests for Judicial Notice

6    Plaintiffs have requested that the court take judicial notice of two decisions issued

7  in other jurisdictions after defendants' motion to dismiss was submitted for decision.  (Docs. No.

8  99 & 106.)

9    In the order filed in this action on March 29, 2010 (Doc. No. 79), the undersigned

10  has already acknowledged that a court considering a motion to dismiss pursuant to Rule 12(b)(6)

11  is permitted to consider matters of public record.  See Lee v. City of Los Angeles, 250 F.3d 668,

12  688-89 (9th Cir. 2001); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

13  Moreover, a court may take judicial notice of its own files and documents filed in other courts.

14  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking

15  judicial notice of documents related to a settlement in another case that bore on whether the

16  plaintiff was still able to assert its claims in the pending case); Burbank-Glendale-Pasadena

17  Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998); Hott v. City of San Jose,

18  92 F. Supp. 2d 996, 998 (N.D. Cal. 2000) (taking judicial notice of relevant memoranda and

19  orders filed in state court cases).

20    Here, plaintiffs offer two court decisions for the purpose of bolstering their legal

21  arguments in opposition to the pending motion to dismiss.  Plaintiffs do not contend that the

22  decisions contain or in some way constitute adjudicative facts relevant to this case.  See Fed. R.

23  Evid. 201.  Plaintiffs' requests for judicial notice are denied.  Nonetheless, the court has

24  considered the two decisions provided by plaintiffs as supplemental briefing in opposition to the

25  pending motion.

26  /////

13

III.  <u>Choice of Law Issues</u>

      The parties dispute whether California or New York law applies to plaintiffs' state law claims.  Defendants argue that plaintiffs' claims fail under the law of either state.

      Federal courts apply the choice-of-law rules of the state in which the federal court is located.  <u>Klaxon Co. v. Stentor Electric Mfg. Co.</u>, 313 U.S. 487, 496 (1941).  California applies a "governmental interest" approach to choice of law in tort cases.  <u>Reich v. Purcell</u>, 67 Cal. 2d 551, 554-55 (1967).  The objective of this approach is to determine the law that most appropriately applies to the issue involved, considering the interests of the litigants and all states involved.  67 Cal. 2d at 555.

      Where a true conflict exists between states in a particular case, the court's task under California law is to determine which state's interest would be more impaired if its policy were subordinated to that of the other state or states.  <u>Bernhard v. Harrah's Club</u>, 16 Cal. 3d 313, 320 (1976).  A three-step analysis is used for this purpose: (1) first, the court determines whether the foreign state's law actually differs from that of the forum state; (2) if there is a difference, the court examines each jurisdiction's interest in the application of its own law to determine whether a true conflict exists; and (3) if each jurisdiction has a legitimate interest in the application of its own law, the court analyzes the comparative impairment of the interested jurisdictions and applies the law of the state having an interest or interests that would be more impaired if its law were not applied.  <u>Tucci v. Club Mediterranee</u>, 89 Cal. App. 4th 180, 189 (2001).

      In fraud cases where the defendant's representations and the plaintiff's reliance on them took place in the same state, that state's law governs.  5 B.E. Witkin, <u>Summary of California Law</u> § 195 (10th ed. 2005 & Supp. 2011).  When the plaintiff's reliance took place in a state other than the state in which the defendant's representations were made, the court must consider the following contacts to determine which state has the most significant relationship: (a) the place of reliance by the plaintiff; (b) the place where the representations were received by the plaintiff; (c) the place where the representations were made by the defendant; (d) the

domicile, residence, nationality, place of incorporation, and place of business of the parties; (e) the place where any property that was the subject of the transaction was situated at the time; and (f) the place where the plaintiff was to render performance under a contract induced by the fraud. Id.

Here, California is the place of reliance by the plaintiffs, California appears to be the place where the defendants' representations were received by the plaintiffs, and California is the place of plaintiffs' domicile and residence.  New York appears to be the place where the representations were made by the defendants, as well as the place of incorporation and principal place of business of all defendants.  (See Defs.' Notice of Removal (Doc. No. 1) at 2 & 6.)

In light of the moving parties' position that California law and New York law do not differ substantially with respect to the elements of plaintiffs' tort claims, the undersigned does not find a true conflict that requires this court to resolve the choice-of-law issue for purposes of ruling on defendants' pending motion.  As a practical matter, the court will look primarily to California law.  See Rice v. Charles Schwab, No. SACV 10-00398-CJC (MLGx), 2010 WL 5156654, at *2 n.2 (C.D. Cal. Oct. 22, 2010) (declining to resolve the choice-of-law issue in case alleging negligent and intentional misrepresentation for credit ratings published by Moody's, but noting that "the only substantive difference between New York and California law is the limitation of liability for negligent misrepresentation to certain plaintiffs to whom defendants owe a duty"); In re Nat'l Century Fin. Enters. Inv. Litig., 580 F. Supp. 2d 630, 645 n.1 (S.D. Ohio 2008) (looking primarily to Ohio law on motion to dismiss claim for common law fraud in consolidated actions against rating agencies and refraining from making choice-of-law determinations until facts were further developed); see also In re Merrill Lynch Auction Rate Securities Litigation, No. 09 MD 2030 (LAP), 2011 WL 536437, at *12-13 (S.D.N.Y. Feb 9, 2011) (in addressing common law negligent misrepresentation claim brought against the defendant Rating Agencies, concluding that it was unnecessary to determine whether New York or California applied because under law plaintiff stated no actionable claim).

IV.  <u>Substantive Law Applicable to the Claims Alleged in Plaintiffs' First Amended Complaint</u>

California's general fraud statute provides a cause of action for "fraudulent deceit": "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Cal. Civ. Code § 1709.  Four kinds of deceit are encompassed by § 1709:  (1) intentional misrepresentation, (2) negligent misrepresentation, (3) concealment, and (4) false promise.  Cal. Civ. Code § 1710.  Intentional misrepresentation is "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true."  Cal. Civ. Code § 1710(1).  Negligent misrepresentation is "[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true."  Cal. Civ. Code § 1710(2).  California's statutory definition of negligent misrepresentation as a form of deceit is consistent with the state's statutory definition of "actual fraud" as including "[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, even though he believes it to be true."  Cal. Civ. Code § 1572(2).

The elements of fraud, which give rise to the tort action for deceit, are  (a) misrepresentation, (b) knowledge of falsity (or scienter), (c) intent to defraud, i.e., to induce reliance, (d) justifiable reliance, and (e) resulting damage.  5 B.E. Witkin, <u>Summary of California Law</u> § 772 (10th ed. 2005 & Supp. 2011).  Scienter is not an element of the tort of negligent misrepresentation, however, because that tort, in contrast to the torts of fraud and intentional misrepresentation, is not an intentional tort.  <u>Id.</u> § 819.  "A tort, whether intentional or negligent, involves a violation of a *legal duty*, imposed by statute, contract, or otherwise, owed by the defendant to the person injured."  <u>Id.</u> § 6.

Although the misrepresentation at the heart of any tort cause of action for deceit must ordinarily be an affirmation of fact, a misrepresentation of law may become actionable either as an actionable opinion or as a statement of mixed law and fact.  <u>Id.</u> § 773.  As a general rule, opinions are not actionable.  <u>Id.</u> §774.  "A representation is one of opinion 'if it expresses only (a) the belief of the maker, without certainty, as to the existence of a fact; or (b) his

1   judgment as to quality, value, authenticity, or other matters of judgment.'" Id. § 774 (quoting

2   Restatement (Second) of Torts § 538A).

3   IV.  Discussion

4           Upon examination of plaintiffs' amended complaint, the court finds that the entire

5   pleading is grounded in fraud.  Under California law, as set forth above, both intentional and

6   negligent misrepresentation claims are fraud claims by statutory definition, and plaintiffs have

7   alleged "a unified course of fraudulent conduct" as the basis for all three of their tort claims.

8   Even plaintiffs' negligent misrepresentation claim is rife with allegations that defendants' ratings

9   were "bogus" and that defendants "knew at all times that their ratings were either erroneous or

10  outright false."  (Doc. 80 at 14-17.)  All three claims are therefore subject to Rule 9(b)'s

11  heightened pleading standard.  See In re Daou Systems, Inc., 411 F.3d at 102.

12          The court finds that plaintiffs have failed to allege the circumstances constituting

13  defendants' alleged fraud in terms specific enough to give each defendant notice of its particular

14  misconduct so that the defendant can defend against the charge instead of merely denying that it

15  did anything wrong.  See Kearns, 567 F.3d at 1124; Bly-Magee, 236 F.3d at 1019.  Plaintiffs'

16  first amended complaint contains very few allegations of facts that are not conclusory, and those

17  few facts set forth nothing more than the neutral facts necessary to identify the transactions at

18  issue.  See Kearns, 567 F.3d at 1124; Bly-Magee, 236 F.3d at 1019; In re GlenFed, Inc. Sec.

19  Litig., 42 F.3d at 1548.  Plaintiffs merely allege that defendants' ratings themselves were the

20  misrepresentations at issue but fail to allege with particularity the time, place, and specific details

21  of each defendant's ratings as well as the identities of the parties to the misrepresentations.  See

22  Swartz, 476 F.3d at 764; Edwards, 356 F.3d at 1066; Miscellaneous Serv. Workers, Drivers &

23  Helpers v. Philco-Ford Corp., 661 F.2d at 782.  Moreover, plaintiffs have completely failed to

24  identify the role of each defendant in the alleged fraudulent scheme.  See Swartz, 476 F.3d at

25  765; Moore, 885 F.2d at 541.

26  /////

1    The court also finds that plaintiffs' pleading does not meet the Rule 8 pleading

2    standard, as the amended complaint lacks sufficient factual matter to state a claim to relief that is

3    plausible on its face.  Facial plausibility is absent because plaintiffs have failed to plead enough

4    factual content to allow the court to draw the reasonable inference that defendants are liable for

5    the misconduct alleged by plaintiffs.  While plaintiffs' amended complaint pleads facts consistent

6    with the possibility of liability on the part of defendants, the pleading falls short of the line

7    between possibility and plausibility of entitlement to relief.  See Iqbal, 129 S. Ct. at 1949 (citing

8    Twombly, 550 U.S. at 557.)  See also Reese v. BP Exploration (Alaska), Inc., 643 F.3d 681 690

9    (9th Cir. 2011) ("[I]n pleading fraud, 'a party must state with particularity the circumstances

10   constituting fraud or mistake,' Fed. R. Civ. P. 9(b), and . . . must plead plausible allegations.")

11   Plaintiffs' legal conclusions and references to the elements of their causes of action are supported

12   only by conclusory statements that are not entitled to a presumption of truth.  Iqbal, 129 S. Ct. at

13   1949-50; Shroyer v. New Cingular Wireless Services, Inc., 622 F.3d 1035 1044 (9th Cir. 2010)

14   ("What remains are conclusory allegations about fraud and the unfair treatment of New

15   Cingular's customers, and the court cannot determine from Shroyer's barebone allegations that

16   he has stated a plausible claim.")  The few non-conclusory factual allegations in plaintiffs'

17   amended complaint are insufficient, taken as true and construed in the light most favorable to the

18   plaintiff, to plausibly give rise to an entitlement to relief.

19   Finally, the court finds that plaintiffs have failed to allege facts demonstrating that

20   defendants owed the plaintiffs a duty of care.  Plaintiffs allege only that they are members of a

21   specific and limited class of investors "looking for safe investment grade corporate bonds, bonds

22   issued from investment banks that were not likely to fail and would pay to maturity all that was

23   promised under the terms of the bonds."  (Doc. No. 80 at 14-15.)  These allegations are

24   inadequate to establish that defendants owed plaintiffs a duty.

25   A defendant may be held liable for negligent misrepresentation "in the

26   dissemination of commercial information to persons who were 'intended beneficiaries' of the

information." <u>Bily v. Arthur Young & Co.</u>, 3 Cal. 4th 370, 410 (1992).  The representation must

have been made with the intent to induce the plaintiff, "or a particular class of persons to which

plaintiff belongs, to act in reliance upon the representation in a specific transaction, or a specific

type of transaction, that defendant intended to influence."  <u>Id.</u> at 414 (internal quotation omitted).

> <u>Bily</u> creates an objective standard that looks to the specific
> circumstances to ascertain whether a supplier of information has
> undertaken to inform and guide a third party with respect to an
> identified transaction or type of transaction.  If such a specific
> undertaking has been made, liability is imposed on the supplier.  If,
> on the other hand, the supplier "merely knows of the ever-present
> possibility of repetition to anyone, and possibility of action in
> reliance upon [the information] on the part of anyone to whom it
> may be repeated," the supplier bears no legal responsibility.

<u>Glenn K. Jackson, Inc. v. Roe</u>, 273 F.3d 1192, 1200 n.3 (9th Cir. 2001) (quoting <u>Bily</u>, 3 Cal. 4th

at 410) (brackets in original).  <u>Compare</u> <u>Rice</u>, 2010 WL 5156654 at *3-4 (finding that the

plaintiffs failed to state a claim for negligent misrepresentation under New York or California

law where the plaintiffs' conclusory allegations about communication of credit ratings to the

plaintiffs and their broker failed to establish a privity-like relationship or demonstrate that the

plaintiffs were within a limited group of persons to whom defendants intended to communicate

their ratings) <u>with</u> <u>Anschutz Corp. v. Merrill Lynch & Co., Inc.</u>, ___ F. Supp. 2d ___, ___, 2011

WL 1134321, at *19 (N.D. Cal. March 27, 2011) (finding that the class of qualified institutional

buyers was sufficiently limited for purposes of finding duty, even though the class might number

in the thousands, where the securities were not available to the general public, the rating agencies

had been involved in structuring the securities and allegedly helped structure them specifically

for marketing to qualified institutional buyers, and knew who would review and rely on their

ratings); and <u>Nutmeg Securities, Ltd. v. McGladrey & Pullen</u>, 92 Cal. App. 4th 1435, 1445 (Cal.

App. 2001) (finding that a class of potential "IPO underwriters" was a sufficiently narrow and

circumscribed class of persons for purposes of a duty of care).

> Here, plaintiffs do not allege that defendants' ratings of the Lehman Brothers'

bonds purchased by plaintiffs were communicated solely to plaintiffs or were made available

1  solely to a class of persons limited to conservative bond investors.  Rather, it appears clear from

2  the amended complaint itself that the ratings were available to the general public and that any

3  person could invest in the Lehman Brothers bonds purchased by plaintiffs.  (See Doc. No. 80 at

4  16.)  Accordingly, the court finds that plaintiffs' allegations do not allege facts that establish

5  either privity with defendants, as required by New York law, or membership in a limited group of

6  intended beneficiaries, as required by California law.

7  V.  Possibility of Curing Defects By Amendment

8          The undersigned has carefully considered whether there is any possibility that

9  plaintiffs may amend their complaint a second time to state a cognizable claim that would not be

10  subject to dismissal.  "Valid reasons for denying leave to amend include undue delay, bad faith,

11  prejudice, and futility."  California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d

12  1466, 1472 (9th Cir. 1988).  See also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv.

13  Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while leave to amend shall be freely

14  given, the court does not have to allow futile amendments).

15          Plaintiffs have already amended their complaint with detailed advice concerning

16  the applicable pleading standards but have failed to allege any of their claims with the specificity

17  required by Rule 9(b) or the detail required to establish plausibility under Rule 8.  In addition, it

18  does not appear that plaintiffs can cure the failure to allege facts establishing duty on the part of

19  defendants for purposes of their claim for negligent misrepresentation.  Therefore, granting

20  further leave to amend would be futile.

CONCLUSION

21

22          Accordingly, IT IS HEREBY ORDERED that:

23          1.  Plaintiffs' requests for judicial notice (Doc. Nos. 99 & 106) are denied;

24          2.  Plaintiffs' March 14, 2011 application for continuance (Doc. No. 104) is

25  denied as moot; and

26  /////

20

1          IT IS RECOMMENDED that:

2          1.  Defendants' May 3, 2010 joint motion to dismiss plaintiffs' first amended

3  complaint (Doc. No. 85) be granted without leave to amend; and

4          2.  This action be dismissed with prejudice.

5          These findings and recommendations will be submitted to the United States

6  District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

7  twenty-one (21) days after this order is electronically filed and served on all parties, any party

8  may file and serve written objections with the court.  A document containing objections should

9  be titled "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to

10  objections shall be filed and served within seven (7) days after the objections are served.  No

11  surreplies are permitted.  The parties are cautioned that failure to file objections within the

12  specified time may, under certain circumstances, waive the right to appeal the District Court's

13  order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14  DATED: August 5, 2011.

16

17  DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

18  DAD:kw
    dad1/orders.pro se/grassi0543.mtd.fac.f&r.rev

21